MERIDIAN TOWNSHIP *v.* PALMER.

1. HIGHWAYS AND STREETS—WAY OF CONVENIENCE.
   Ordinarily the public would have only an easement of passage over a roadway of convenience with the duty of taking proper care of it.

2. WATERS AND WATERCOURSES—INLAND LAKE—RIPARIAN OWNER.:
   Riparian owner has exclusive use of bank and shore on an inland lake, and may erect bathing houses and structures thereon for his business or pleasure.

3. SAME—RIPARIAN RIGHTS—ACCRETIONS—HIGHWAYS AND STREETS.
   Since mere easement of passage in public for roadway purposes does not divest grantors of the easement of their rights to property adjoining the road or to relicted land, owner of land on side opposite 66-foot road from lake, who claimed strip of land on lake side of road about 25 or 30 feet wide which had been formed by recession of water line, may rightfully deny bathers free access to and from such land and may maintain fences thereon where road merely runs along and does not terminate at the lake.

4. COSTS—PUBLIC QUESTION—EASEMENT FOR HIGHWAY ALONG LAKE SHORE.
   No costs are allowed on appeal upon affirmance of decision denying township injunction against riparian owner from excluding public from narrow strip of land along lake shore on opposite side of highway from land occupied by him, the question being a public one.

Appeal from Ingham; Carr (Leland W.), J. Submitted January 13, 1937. (Docket No. 126, Calendar No. 39,347.) Decided May 21, 1937.

Bill by Meridian Township, a municipal corporation, against Joseph V. Palmer and wife to restrain

the charging of an admission fee for entering a strip of land located on a lake shore, to remove a fence and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Pierce, Planck & Ramsey,* for plaintiff.

*Greene & Bird,* for defendants.

BUTZEL, J.  Lake Lansing, formerly known as Pine Lake, is a meandered body of water with an area of about 1,000 acres, surrounded by farms in plaintiff township. It has no navigable inlet or outlet. In order to maintain the level of the lake, a dam was built so as to prevent water, after heavy rains, from running into the county drain.  There are a number of homes, summer cottages and a few amusement or pleasure parks along the shore of the lake.  At one time, considerable small boats, including one which could carry 200 passengers, were used on the lake.  The latter boat at one time ran a regular schedule, meeting the Grand Trunk local passenger trains at Haslett, Michigan.  In later years, pleasure craft, propelled by gasoline engines and at times used to carry passengers for hire, have plied the waters.

Reynolds road in plaintiff township was built partly along the north side of the lake.  It is less than one mile long and runs over one-half of the distance along the shore.  The road has a width of 66 feet.  Evidently it is an old road for the record indicates that it was resurveyed or altered in 1866. It apparently was narrower for many years — possibly a road of convenience.  Ordinarily the public would have only an easement of passage over such a roadway with the duty of taking proper care of it.

There is no showing by plaintiff that the public has more than an easement in the road.

Defendants own the property on the north side of the road. They also claim a narrow strip between the southerly line of the road and the edge of the lake. The strip is from 20 to 25 feet wide and was created by a gradual recession of the water line. At one time, the water line came clear up to the south side of the road in front of defendants' property. Defendants claimed the strip of land south of the road and in 1936 caused a fence about 8 feet high and 733 feet long to be built on the strip of land between the water and the roadway. Plaintiff in its brief describes the fence as built on land of defendants and that of a neighbor. Defendant Palmer testified that when he purchased the property, it was impossible for two cars to pass on the road and that he built up the shore line, spent several hundred dollars in repairing the road where it had been washed out into the lake and that he built a large sand bank in order to wall in the road; that he raised it about a foot to keep the road in a condition fit for travel; that he extended the bank from the road out towards the lake; that he removed cans, glass, broken bottles and weeds from the bottom of the lake in front of his property and that he keeps it in repair. Defendant has thus cleared and conditioned a bathing beach which he has fenced in and for the use of which he makes a small charge to the public. He has also erected a bathhouse. He claims the strip of land as his private property. Plaintiff brought a suit asking that defendants be enjoined from denying bathers free access to and from the strip of land, and that the fence be removed. Plaintiff does not deny that defendants are the riparian owners of the property, but plants its entire case on the claim that the lake is

a navigable one and that when a road borders upon a navigable body of water, any land added by recession becomes subject to the same easement of passage and right of access to the navigable waters. It makes no claim to any rights in the strip of land unless the lake is navigable. It does not claim that the shore line is the terminus of the road, or that it acquired rights in the strip by purchase, dedication of record or eminent domain.

There are elements in the case that indicate navigability, notwithstanding the trial judge's ruling to the contrary. But assuming that the lake is navigable, we nevertheless reach the same result as that arrived at by the trial judge, who dismissed the bill of complaint. The rule laid down by the majority opinion of this court as to riparian rights is set forth in *Hilt* v. *Weber,* 252 Mich. 198, 226 (71 A. L. R. 1238), as follows:

"The riparian owner has the exclusive use of the bank and shore, and may erect bathing houses and structures thereon for his business or pleasure (45 C. J. p. 505; 22 L. R. A. [N. S.] 345; *Town of Orange* v. *Resnick,* 94 Conn. 573 [109 Atl. 864, 10 A. L. R. 1046]); although it also has been held that he cannot extend structures into the space between low and high-water mark, without consent of the State (*Thiesen* v. *Railway Co.,* 75 Fla. 28 [78 South. 491; L. R. A. 1918E, 718]). And it has been held that the public has no right of passage over dry land between low and high-water mark but the exclusive use is in the riparian owner, although the title is in the State. *Doemel* v. *Jantz,* 180 Wis. 225 (193 N. W. 393, 31 A. L. R. 969)."

Appellants claim that the present case differs because of the existence of the road, a portion of which abuts the lake for a considerable distance. The rec-

ord, however, is devoid of any testimony showing any interest in the public beyond an easement of passage over the 66-foot strip, constituting the road. Plaintiff relies strongly on *Backus* v. *City of Detroit,* 49 Mich. 110 (43 Am. Rep. 447), wherein a strip of land constituting a street extended to and terminated upon the river bank, having been dedicated to the city. The opinion states that in thus dedicating the way to the river it was the intention of the grantor to give the public access to the river and not merely to a wall on its bank or some other obstruction put up to preclude access; and that it must have been understood by the grantors that:

" 'the purpose was to provide means of access for the public to navigable waters,' and that 'such was the scope and purpose of the dedication.' "

In *State* v. *Yates,* 104 Me. 360 (71 Atl. 1018, 22 L. R. A. [N. S.] 592), the court said in reference to a street which terminated upon a navigable body of water:

"Here is the case of a street laid out to connect with the sea, a continuous way on land and water. The apparent purpose of extending the street to high-water mark was to make such a continuous way. And yet unless it be true that the terminus of the street followed 'high-water mark' as it might be moved seaward by accretion, we have this curious result. In order to afford the public continuous access to the water way, it would have been necessary for the authorities to lay out new additions to the street as often as the imperceptible accretion by accumulation became perceptible. Such a conclusion is not reasonable."

It is clear, however, that cases involving a street which *terminates* upon a navigable body of water

are beside the mark when applied to the instant case.

Appellants, however, call attention to *Potomac Steamboat Co.* v. *Upper Potomac Steamboat Co.,* 109 U. S. 672 (3 Sup. Ct. 445; 4 Sup. Ct. 15). The rights of the public in that case were derived through the United States, but it appeared that the United States was itself the riparian owner in fee simple absolute of the strip of land that adjoined the river, known as Water street, and that the United States held its title to the land over which said street was laid out for its own use and not in trust for any person nor any purpose. The superiority of the public right in such a case is clear.

In the instant case, however, plaintiff has failed to show that the public acquired any interest beyond a 66-foot easement of passage for roadway purposes. When an easement is given for roadway purposes, the grantors of the easement do not part with their rights to property adjoining the road or to relicted land. There was a total lack of proof showing that the easement in the 66-foot strip included the right in the public to go onto the lake; nor is the lake front a terminus of the road as in *Backus* v. *City of Detroit, supra.* The lower court reached the correct result, but on different grounds.

The decree is affirmed, but without costs, the question being of public nature.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.