McCARDEL v SMOLEN

Docket No. 59186. Argued January 5, 1978 (Calendar No. 13).—Decided December 27, 1978.

Gary and Linda McCardel, and James and Trudy Mimura, who own lots in Michigan Central Park Subdivision adjoining a beach on Higgins Lake in Roscommon County, brought an action for an injunction to prevent infringement of the plaintiffs' riparian rights against Joseph M. Smolen and others, who own lots in the subdivision which are one or more rows away from the beach. The undeveloped beach property was designated a "boulevard" in the plat of the subdivision and was dedicated to the use of the public. The Roscommon Circuit Court, Carl L. Horn, J., granted judgment for the plaintiffs. The Court of Appeals, Allen, P.J., and D. E. Holbrook, Jr., and Papp, JJ., affirmed in part, deciding that only the plaintiffs could construct docking facilities and permanent mooring devices in front of their lots; however, members of the public and the defendants could "lounge", picnic, and have access to the lake by the boulevard provided that they do not unreasonably interfere with the plaintiffs' rights (Docket No. 22696). Plaintiffs appeal. *Held:*

1. Erecting or maintaining docks or boat hoists near the water's edge is a riparian or littoral right. The circuit court concluded in this case that riparian or littoral rights are an

REFERENCES FOR POINTS IN HEADNOTES

[1] 78 Am Jur 2d, Water § 260 *et seq.*
79 Am Jur 2d, Wharves §§ 4, 10, 25-27, 43.
[2] 5 Am Jur 2d, Appeal and Error §§ 707, 708, 746.
Failure to cross-appeal as affecting scope of appellate review—Supreme Court cases. 1 L Ed 2d 1820.
[3] 12 Am Jur 2d, Boats and Boating §§ 23, 25.
78 Am Jur 2d, Water §§ 51, 52.
Right of public to fish in stream notwithstanding objection by riparian owner. 47 ALR2d 381.
Rights of fishing, boating, bathing, or the like in inland lakes. 57 ALR2d 569.
[4] 78 Am Jur 2d, Water §§ 52, 93, 94, 260, 280.
[5, 6] 78 Am Jur 2d, Water §§ 51, 52, 234, 260-280.

incident of front-lot ownership, and enjoined the defendants from, among other activities, erecting or maintaining docks and boat hoists. The Court of Appeals affirmed that aspect of the judgment. Although the defendants were granted leave to add a question to the ones for which the plaintiffs were granted leave to appeal, the defendants did not seek leave to cross-appeal. Accordingly, they may not obtain a decision on appeal more favorable to them than was rendered by the Court of Appeals. Therefore, whether the riparian or littoral rights are an incident of front-lot ownership or belong to the public because of dedication of the boulevard, there is no basis for review of the judgment of the circuit court or Court of Appeals regarding erecting, maintaining, or using docks and boat hoists.

2. Although bathing, swimming, and temporarily anchoring boats in front of the plaintiffs' property may be riparian or littoral rights, the plaintiffs do not have the right to exclude the general public from also engaging in those activities in the waters in front of their property. The public has a right to navigate and to exercise the incidents of navigation on waters of this state which are capable of being navigated by oar- or motor-propelled craft, so long as members of the public have lawful means of access to such waters. The public may lawfully enter the waters of Higgins Lake from the points where the other streets of the subdivision terminate at the water's edge, and may use the waters in front of the plaintiffs' lots, provided they have lawfully gained access, for bathing, swimming, and temporarily anchoring boats.

3. Lounging and picnicking on this wide boulevard, activities which need not involve use of the water, are not riparian or littoral rights. Even assuming that the defendants choose to lounge and picnic on the boulevard because of the lake's proximity, the only "use" of the water is the enjoyment of its scenic presence. Just as clearly, access to and from the water is a riparian or littoral right.

4. Assuming, *arguendo*, that the plaintiffs own the riparian or littoral rights as an incident of front-lot ownership, it does not follow necessarily that the public does not have the right to enter and leave the water from the boulevard. That right, like the right to lounge and picnic on the boulevard, does not depend on ownership of riparian or littoral rights, but on the scope of the dedication. The plaintiffs may own the riparian or littoral rights, for example the right to erect and maintain docking and mooring facilities, and yet there may have been a dedication to the public of a right to lounge and picnic on the boulevard and to enter and leave the water for swimming and

boating purposes. It does not appear from the stipulation of facts and issues on which this appeal is presented whether the issue of the scope of the dedication was addressed in the circuit court; few facts are presented. The Court of Appeals should not have addressed that issue. The portion of its opinion that decides that lounging and picnicking on the boulevard and entering and leaving the water are within the scope of the dedication is vacated. The issues of the scope of the dedication, and its acceptance or abandonment, should be first addressed in the circuit court.

The judgment of the Court of Appeals is affirmed as to bathing, swimming, and anchoring boats, and erecting or maintaining docks. The cause is remanded to the circuit court for consideration of the issue whether the right of the public to lounge and picnic on the boulevard, and to enter or leave the water by the boulevard, is within the scope of the dedication.

71 Mich App 560; 250 NW2d 496 (1976) affirmed in part, vacated in part.

1. WATERS AND WATER COURSES — RIPARIAN RIGHTS — WHARVES — DOCKS AND BOAT HOISTS — WORDS AND PHRASES.

Erecting or maintaining docks or boat hoists near the water's edge is a riparian or littoral right.

2. APPEAL AND ERROR — CROSS-APPEAL — RELIEF.

An appellee who does not seek leave to cross-appeal may not obtain a decision on appeal more favorable to him than was rendered by the Court of Appeals.

3. NAVIGABLE WATERS — WATERS AND WATER COURSES — PUBLIC RIGHTS.

The public has a right to navigate and to exercise the incidents of navigation, such as bathing, swimming and temporarily anchoring boats, on waters of the state which are capable of being navigated by oar- or motor-propelled craft, so long as members of the public have lawful means of access to such waters; plaintiff landowners who claim riparian or littoral rights in their lakefront property do not have the right to exclude the general public from also engaging in those activities in the navigable waters in front of their property.

4. WATERS AND WATER COURSES — RIPARIAN RIGHTS — LOUNGING — PICNICKING — WORDS AND PHRASES.

Lounging and picnicking on a strip of beach property on an inland lake, which was dedicated to the public by a recorded plat as a boulevard, are activities which need not involve use of

the water and are not riparian or littoral rights; even assuming that people choose to lounge and picnic on the boulevard because of the lake's proximity, the only "use" of the water is the enjoyment of its scenic presence.

5. WATERS AND WATER COURSES — INLAND LAKES — ACCESS — DEDICATION — WORDS AND PHRASES.

Ownership of riparian rights in lakefront property does not necessarily preclude access by the public to the lake by means of property at the water's edge dedicated to public use; whether the public has the right to enter and leave the water by way of the dedicated property depends on the scope of the dedication.

6. WATERS AND WATER COURSES — INLAND LAKES — ACCESS — LOUNGING — PICNICKING — HIGHWAYS — BOULEVARDS — PLATTED LAND — PUBLIC DEDICATION.

The scope of the public's right to enter and leave the water of an inland lake from a strip of beach property, which was dedicated to the public by a recorded plat as a boulevard, like their right to lounge and picnic on the boulevard, depends on the scope of the dedication.

*Fortino, Plaxton & Moskal* for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *James W. Williams)* for defendants.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Russell E. Prins* and *Jerome Maslowski,* Assistants Attorney General, for the state.

LEVIN, J. Plaintiffs, who own subdivision lots facing Higgins Lake, commenced this action to enjoin the defendants, who own interior lots in the subdivision, from using the beach and water.

A strip of land between the lake and the lots owned by plaintiffs and others ("front lots") is

designated on the plat[1] as Michigan Central Park Boulevard; "streets and allies [sic] as shown on" the plat were "dedicated to the use of the public". The boulevard has not been developed or maintained as a roadway or "opened" to vehicular traffic;[2] it is covered with underbrush and trees except along the water's edge where it is a wide sand beach.

Defendants contend that the riparian rights[3] in the Higgins Lake frontage were vested in the public by the dedication of the boulevard to public use. The public at large and, hence, owners of interior lots ("back lots") may use the beach and water for lounging, swimming and boating purposes.

Plaintiffs contend that the dedication granted the public only the right to use the boulevard for street purposes, e.g., pedestrian and vehicular travel. Although the front lots are separated from the lake by the boulevard, the riparian rights remain an incident of front lot ownership. The general public (including back lot owners such as defendants) may not use the boulevard and adjoining waters for beach purposes.

The parties stipulated the issues on appeal from the circuit court:

—To whom do the riparian rights along Michigan Central Park Boulevard belong?

—Whether lounging, picnicking, bathing, swim-

---

[1] See *McCardel v Smolen,* 71 Mich App 560, 572; 250 NW2d 496 (1976), for a reproduction of the plat.

[2] The other streets shown on the plat have been "opened and maintained".

[3] "The words 'riparian owner' have been frequently applied * * * to ownership on the shores of the sea or of a lake, a condition more accurately expressed by the phrase 'littoral owner.' Strictly speaking, a riparian owner is one whose land abuts upon a river and a littoral owner is one whose land abuts upon a lake or sea." 78 Am Jur 2d, Waters, § 260, pp 703-704.

ming, launching and anchoring boats, and erecting or maintaining docks and boat hoists are all riparian rights.

The circuit court had enjoined the defendants from engaging in the activities described in the second issue. The Court of Appeals vacated the injunction except insofar as it bars the defendants from erecting and maintaining docks and boat hoists and from using plaintiffs' docks and boat hoists. We affirm the decision of the Court of Appeals but vacate a portion of its opinion, and remand to the circuit court for further proceedings not inconsistent with this opinion.

I

Erecting or maintaining docks or boat hoists near the water's edge is a riparian or littoral right, and the parties are in agreement in that regard.[4]

The circuit court concluded that in the instant case the riparian or littoral rights are an incident of front lot ownership, and enjoined the defendants from, among other activities, erecting or maintaining docks and boat hoists. The Court of Appeals affirmed that aspect of the judgment, stating that "[o]nly the plaintiffs may construct docking facilities and permanent mooring devices in front of their lots".[5]

While this Court granted the defendants permission to add a question, they did not seek leave to cross-appeal. Accordingly, they may not obtain a

[4] See *Grand Rapids v Powers,* 89 Mich 94, 102; 50 NW 661 (1891); *Hilt v Weber,* 252 Mich 198, 225; 233 NW 159; 71 ALR 1238 (1930); *Backus v Detroit,* 49 Mich 110, 112; 13 NW 380 (1882) ("if a private individual were owner of the bank, his right to construct the wharf would be conceded"); 79 Am Jur 2d, Wharves, § 4, p 176.

[5] *McCardel v Smolen, supra,* p 570.

decision more favorable to them than was rendered by the Court of Appeals.[6] Therefore, whether the riparian or littoral rights are an incident of front lot ownership or belong to the public because of dedication of the boulevard, there is no basis for review of the judgment of the circuit court or decision of the Court of Appeals regarding erecting, maintaining or using docks and boat hoists.

## II

The circuit judge additionally enjoined the defendants from bathing, swimming and temporarily anchoring boats in front of plaintiffs' property. Although those may indeed be riparian or littoral rights,[7] we conclude that plaintiffs do not have the right to exclude the general public from also engaging in those activities in the waters in front of their property.[8]

The Attorney General intervened in the Court of Appeals in behalf of the state to assert the right of the general public to use the waters of Higgins

---

[6] "In the absence of a cross appeal, errors claimed to be prejudicial to appellee cannot be considered nor may appellee have an enlargement of relief." *Pontiac Twp v Featherstone,* 319 Mich 382, 390; 29 NW2d 898 (1947).

"In the absence of a cross appeal, errors claimed to be prejudicial to appellee ordinarily cannot be considered, nor can affirmative relief to appellee be granted." 7A Callaghan's Michigan Pleading & Practice (2d ed), § 57.54, p 320.

"While a decision below may be sustained, without a cross-appeal, although it was rested upon a wrong ground, see *Helvering v Gowran* [302 US 238; 58 S Ct 154; 82 L Ed 224 (1937)], an appellee cannot without a cross-appeal attack a judgment entered below." *Helvering v Pfeiffer,* 302 US 247, 250-251; 58 S Ct 159; 82 L Ed 231 (1937).

"A respondent or an appellee may urge any matter appearing in the record in support of a judgment, but he may not attack it even on grounds asserted in the court below, in an effort to have this Court reverse it, when he himself has not sought review of the whole judgment, or of that portion which is adverse to him." *LeTulle v Scofield,* 308 US 415, 421-422; 60 S Ct 313; 84 L Ed 355 (1940).

[7] *Hilt v Weber, supra,* p 225.

[8] 78 Am Jur 2d, Waters, § 266, p 711.

Lake and the land lying beneath such waters for the purposes of boating, swimming, wading and fishing, which he asserts is an incident of the right of navigation.

Plaintiffs, in their brief in this Court, state that they have never argued that the general public does not have a right of navigation on the waters of Higgins Lake and that they "take no exception whatsoever" to the Attorney General's argument that the public has a right to navigate and to exercise the incidents of navigation on waters of this state which are capable of being navigated by oar- or motor-propelled craft, small craft, so long as members of the public have lawful means of access to such waters.

The Court of Appeals stated: "Assuming lawful access, that portion of the lower court's order which prohibited the defendants from 'bathing, swimming, * * * [temporarily] anchoring boats or similar activities' must be vacated [deletion and addition by the Court of Appeals]."[9]

The public, as plaintiffs acknowledge, may lawfully enter the waters of Higgins Lake from the points where the other streets of the subdivision terminate at the water's edge,[10] and may use the waters in front of plaintiffs' lots, provided they have so or otherwise lawfully gained access, for bathing, swimming and temporarily anchoring boats.

## III

There remain the questions whether the public

[9] *McCardel v Smolen, supra,* p 566.

[10] The plaintiffs' brief states that the public has access to the lake from the dedicated streets, *e.g.,* Hoffman, Kelly, Gallagher, Newman and Sly: "The rule enunciated in the *Backus* case has been followed scrupulously and all of those streets are considered public access to the waters of Higgins Lake."

*Backus v Detroit,* fn 4, *supra,* is discussed in Part III, *infra.*

i) may lounge and picnic on the boulevard and ii) has a right, via the boulevard, of access to and from the water for swimming and boating.[11]

Lounging and picnicking on this wide boulevard, activities which need not involve use of the water, are not riparian or littoral rights. We agree with the Court of Appeals that "[t]hose activities are in no way directly related to a true riparian use of the waters of Higgins Lake; even assuming that the defendants choose to lounge and picnic on the boulevard because of the lake's proximity. In that context, the only 'use' of the water is the enjoyment of its scenic presence".[12]

Just as clearly, access to and from the water is a riparian or littoral right.[13] Assuming, *arguendo,* that the plaintiffs own the riparian or littoral rights as an incident of front lot ownership, it does not follow necessarily that the public does not have the right to enter and leave the water from the boulevard. The question to which the parties have devoted most of their attention in this litigation (ownership of the riparian or littoral rights)[14] is, again, not dispositive. The question whether the public has the right to enter and leave the water from the boulevard, like the question whether they may lounge and picnic on the boulevard, depends, rather, on the scope of the dedication.

---

[11] The injunction barred the defendants from lounging, picnicking, bathing, swimming and launching boats.

[12] *McCardel v Smolen, supra,* p 567.

[13] *Hilt v Weber, supra,* p 225; 78 Am Jur 2d, Waters, § 265, p 710.

[14] Defendants rely on *Potomac Steamboat Co v Upper Potomac Steamboat Co,* 109 US 672; 3 S Ct 445, 4 S Ct 15; 27 L Ed 1070 (1884), discussed in *Meridian Twp v Palmer,* 279 Mich 586, 591; 273 NW 277 (1937).

There has been extensive litigation concerning the ownership of the riparian or littoral rights in Higgins Lake. The most recent decision of the Court of Appeals, except the instant case, is *Kempf v Ellixson,* 69 Mich App 339; 244 NW2d 476 (1976), which, like the Court of Appeals decision in this case, lists the other reported decisions of that Court.

Plaintiffs rely on *Croucher v Wooster*,[15] which recognized riparian or littoral rights as an incident of ownership of land separated from a lake by a roadway, and on *Meridian Township v Palmer*,[16] which declared that the public there did not have a right of access to and from a lake via a roadway along the lake. Defendants assert that those cases are distinguishable because there the roadway was only an easement, the owner retaining the fee, and in the instant case the boulevard was dedicated pursuant to a plat act providing that the recording of a plat "shall be deemed a sufficient conveyance to *vest the fee* of such parcels of land as may be therein designated for public uses in the city or village * * * or * * * township * * * in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever". (Emphasis supplied.)[17]

In an early case, *Backus v Detroit*,[18] the Court concluded that the city could build a wharf in the Detroit River at the end of a street dedicated in a plat governed by a statute substantively the same as the statute in force when the instant plat was recorded. Recognizing that if an individual had

---

[15] *Croucher v Wooster*, 271 Mich 337; 260 NW 739 (1935).

[16] *Meridian Twp v Palmer*, fn 14, *supra*.

[17] "The map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever." 1887 PA 309, § 2.

The substance of the quoted language is found in 1839 PA 91, § 2, and was repeated without substantive change in later enactments and compilations. See, *e.g.*, 1859 PA 35, § 2; How Stat 1474; 1915 CL 3351; 1929 PA 172, § 50; 1929 CL 13247; MCL 560.50; MSA 26.480. The current statute is MCL 560.253; MSA 26.430(253).

[18] *Backus v Detroit*, fn 4, *supra*.

acquired the fee to the street he would have acquired riparian rights, including the right to construct a wharf, the Court declared that the question of the city's right to construct a wharf did not depend on whether, by reason of the plat act, "title passed instead of a mere easement".[19] The Court also declared that the fee passed from the plattor "by the dedication, and the street became subject to all the ordinary uses of city streets. And one of these uses is for a ferry landing when a franchise for the purpose has been obtained".[20] The Court concluded that the scope of the dedication included public access to the river; "that the city derives its authority from the dedication of the public way, and that the construction of a wharf which shall give the means of access from the highway by land to the highway by water, is not inconsistent with the gift".[21]

In *Meridian Township* the question was whether

---

[19] *Backus,* 49 Mich, p 115.

"If, therefore, according to the law as it exists and is recognized in this state, the strip of land which constitutes a street extending to the river bank between lots 33 and 34, had been granted by [the plattor] to an individual, the grantee, or any one claiming under him, would have had an undoubted right to construct the wharf in question. As before stated, it interferes in no manner with the navigation, and the ostensible purpose in constructing it is to aid navigation, not to hinder or embarrass it. But the strip of land was not granted to an individual, but was dedicated to the use of the public as a street. The city is not the public, though it represents the public for all the purposes of control, repair and improvement of the street. The plat, under the statute which was in force when it was made and recorded, passed the fee in all streets marked upon it to the county in which the city is situated: 1871 CL 1345 [1839 PA 91 as amended by 1859 PA 35]; but this was only in trust for street purposes. We attach no special importance to the fact that the title passed instead of a mere easement. The purpose of the statute is not to give the county the usual rights of a proprietor, but to preclude questions which might arise respecting the public uses, other than those of mere passage, to which the land might be devoted. The common-law dedication would be sufficient to estop the owner from setting up any claim or asserting any right to the prejudice of the easement."

[20] *Id.,* p 117.

[21] *Id.,* p 120.

there was a right of access to and from a lake via a roadway running beside it. The Court declared that cases like *Backus,* "involving a street which *terminates* upon a navigable body of water" (emphasis in original), were distinguishable from those where access is sought from a roadway parallelling the water.[22] The Court's conclusion was again based on its perception of the scope of the dedication:

"In the instant case, however, plaintiff has failed to show that the public acquired any interest beyond a 66-foot easement of passage for roadway purposes. When an easement is given for roadway purposes, the grantors of the easement do not part with their rights to property adjoining the road or to relicted land. There was a total lack of proof showing that the easement in the 66-foot strip included the right in the public to go onto the lake; nor is the lake front a terminus of the road as in *Backus v Detroit, supra."*[23]

[22] See *In re Vacation of Cara Avenue,* 350 Mich 283, 291; 86 NW2d 319 (1957), where the Court declared:

"Where a public highway, such as this one, ends at a navigable body of water, public access to said body of water is provided. *Backus v Detroit,* 49 Mich 110 (43 Am Rep 447)."

[23] *Meridian Twp v Palmer, supra,* p 591.

*Meridian Township* can be distinguished on the ground that there, by reason of gradual reliction, there was a strip of land 20 to 25 feet wide between the roadway and the water's edge and it would thus have been necessary for the public to cross defendant's land between the water and the roadway. That was not, however, the basis of decision.

In *Cass County Park Trustees v Wendt,* 361 Mich 247, 252; 105 NW2d 138 (1960), Justice BLACK declared that *"Meridian* should be overruled, and *Backus* should be reinstated for general application where it is shown that a street or highway actually and in the natural state of things contiguously borders or ends in navigable public waters". The Court, however, predicated decision on a judgment in earlier litigation concerning the land that "the public had acquired an easement by user for highway purposes across any lands of the plaintiffs". *Id.,* p 253.

In the instant case the circuit court rejected the defendants' claim that they had rights acquired by user, stating that they had not established "a private claim of adverse possession to said riparian rights". The defendants did not appeal that determination to the Court of Appeals.

*Backus* was described thus in *Meridian Township:*[24]

"The opinion states that in thus dedicating the way to the river it was the *intention of the grantor* to give the public access to the river and not merely to a wall on its bank or some other obstruction put up to preclude access; and that it must have been *understood by the grantors* that:

" ' "the purpose was to provide means of access for the public to navigable waters," and that "such was the *scope and purpose of the dedication."* ' " (Emphasis supplied.)

In *Cass County Park Trustees v Wendt,*[25] the Court, speaking of *Backus,* said:

"It will be noted that the decision was based on the conclusion of the Court as to the *scope of the dedication* of the street as shown on the plat, and in support of its conclusion the Court cited decisions from other states and also decisions of the Federal supreme court." (Emphasis supplied.)

In the instant case, the right of the public to enter and leave the water from the boulevard thus depends on the scope of the dedication, not on who owns the riparian or littoral rights. The plaintiffs may own such rights (including, for example, the right to erect and maintain docking and mooring facilities), and yet there may have been a dedication to the public of a right to lounge and picnic on the boulevard and to enter and leave the water for swimming and boating purposes.

[24] *Meridian Twp v Palmer, supra,* p 590.

[25] *Cass County Park Trustees v Wendt, supra,* p 256.

## IV

The Court of Appeals held that lounging, picnicking and access to and from the water were within the scope of the dedication. While the Court of Appeals perceived the pertinent inquiry, we agree with the plaintiffs that the scope of the dedication was not within the stipulated issues. The Court of Appeals should not have reached the question whether the boulevard was dedicated not only for pedestrian and vehicular uses but additionally for park or beach uses such as lounging, picnicking and access to and from the water for swimming and boating.[26]

It does not appear from the stipulation of facts and issues on which this appeal is presented whether the scope of dedication issue was addressed in the circuit court. Few facts are presented; we are told only that this is a sandy, overgrown strip of land, named a boulevard, dedicated as a "street", used as a beach, "taken over" under the McNitt act[27] by the Roscommon County Road Commission, not opened or maintained for vehicular traffic although other streets in the subdivision have been. The issues concerning the scope of the dedication, and its acceptance or abandonment mentioned in the briefs should be first addressed in the circuit court.

Because we agree with the Court of Appeals that

---

[26] In deciding that lounging and picnicking are appropriate uses of the boulevard, the Court of Appeals said: "It is difficult to believe that any proprietor would plat a lake resort subdivision in a manner which would deny lake access to three-fourths of his intended purchasers. Nor can we readily accept the idea that the proprietor would destroy his development's most valuable asset by barring recreational use of the beach in order to create another street." *McCardel v Smolen, supra,* pp 567-568. Building on that conclusion, it further declared that its recognition of the public's right to lounge and picnic would be "meaningful only if they may continue to enter and leave Higgins Lake via the boulevard". *Id.,* p 569.

[27] 1931 PA 130; 1948 CL 247.1 *et seq.;* MSA 9.141 *et seq.;* superseded by 1951 PA 51; MCL 247.651 *et seq.;* MSA 9.1097(1) *et seq.*

lounging and picnicking on the boulevard are not riparian or littoral rights, and because even if the plaintiffs own such rights they could not, on that basis alone, bar the public from entering or leaving the water (if such activities were within the scope of the dedication), we affirm the decision of the Court of Appeals insofar as it vacates the judgment of the circuit court barring the defendants from lounging and picnicking on the boulevard and entering and leaving the water. Because the Court of Appeals should not have addressed the scope of dedication issue, we vacate so much of its opinion as decides that lounging and picnicking on the boulevard and entering and leaving the water are within the scope of the dedication.

Since both plaintiffs and defendants were in error in asserting that the public's right to enter and leave the water from the boulevard depended on who owns the riparian or littoral rights, we remand the cause to the circuit court for further proceedings not inconsistent with this decision.

In sum, the decision of the Court of Appeals vacating the injunction (except insofar as the injunction bars the defendants from erecting and maintaining docks and boat hoists and from using plaintiffs' docks and boat hoists) and modifying it,[28] is affirmed. No costs.

KAVANAGH, C.J., and COLEMAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

WILLIAMS, J., took no part in the decision of this case.

---

[28] The Court of Appeals declared:

"(1) Only the plaintiffs may construct docking facilities and permanent mooring devices in front of their lots.

"(2) The defendants may engage in the other disputed activities provided that they do not unreasonably interfere with the plaintiffs' private and public rights. *McCardel v Smolen, supra,* p 570.