*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUSTIN BARTLETT and KRISTA BARTLETT,

        Plaintiffs-Appellees/Cross-Appellants,

v

CITY OF LAKE CITY,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
July 18, 2024

No. 364696
Missaukee Circuit Court
LC No. 2021-010380-CH

Before: CAMERON, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Plaintiffs, Justin Bartlett and Krista Bartlett, brought this suit to quiet title, seeking a declaratory judgment that they hold riparian rights in Lake Missaukee in Lake City, Michigan. Plaintiffs also requested that the trial court bar defendant, City of Lake City, from constructing a fence on a road near their property. The trial court entered an order (1) granting plaintiffs' motion for partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and declaring that plaintiffs hold riparian rights in Lake Missaukee; (2) denying plaintiffs' motion for summary disposition under MCR 2.116(C)(10) on the issue of defendant's authority to erect the fence; and (3) granting defendant's countermotion for summary disposition under MCR 2.116(I)(2) (nonmoving party entitled to summary disposition) on the fence issue. Defendant appeals by right, arguing that the trial court erred when it granted plaintiffs' motion and held that plaintiffs had riparian rights in Lake Missaukee because the trial court failed to properly apply the law governing roads that terminate at the water's edge. Plaintiffs cross-appeal, arguing that the trial court erred when it denied their motion for summary disposition regarding the fence because defendant's proposed fence project exceeded its authority to control traffic and aided the public's illegal use of the road. We reverse and remand for a trial on these issues.

## I. BACKGROUND

On April 27, 1966, John and Mary Eising dedicated the plat of Eising's Addition to Lake City, Michigan ("the plat"). The plat was recorded and approved by Lake City on May 9, 1966, the County Road Commission on May 11, 1966, and Missaukee County on May 17, 1966. A copy of the plat (excluding accompanying notes) is reproduced below:



As shown, the plat consists of 13 lots, a private walk, and two public road dedications. The plat abuts two other public roads that are outside the boundaries of Eising's Addition: Marion Street and Logan Street. Logan Street (referred to by the parties and trial court as "Logan Street South") was originally dedicated as part the Langley's Second Addition to the Village of Lake City, Michigan on August 1, 1911. A strip of land, directly north of Logan Street, labeled "Logan Street (public)," comprises the southern portion of the plat and runs along the edge of Lake Missaukee for 17.2 feet. This strip of land, referred to by the trial court and parties as "Logan Street North," separates Lots 1 through 5 from the southern boundary line of the plat. The plat contains the following relevant dedications and notes: (1) "[T]he Drives and Streets as shown on said plat are hereby dedicated to the use of the public;" (2) "All lake front lots extend to the water's edge;" and (3) "Lots 7 and 5 front on the boundary of the plat." Plaintiffs own Lot 5 and a portion of Lot 4 in the plat.

Before this litigation, defendant developed a project to place fencing at various roads across the city that terminate at the edge of Lake Missaukee. Defendant's proposed project was to place fencing across the entirety of the respective road rights-of-way with ends turning about 90 degrees. The fencing would "have a six-foot-wide access to allow for carrying boats, walking through, and atv/snowmobile access. The fencing [would] also have two signs attached on either side of the six-foot-wide access providing rules that include reference to Michigan law, prohibition on mooring, prohibition on pets, prohibition on long-term and overnight parking, and prohibition against leaving items overnight." The purpose of this fencing was "to protect the rights and safety of the public, to demarcate the area in which the public has rights, and to inform the public of the rules and regulations." According to Raymond Vasser, Superintendent for Lake City, utilities run underground beneath Logan Street North. Pictures of the property show that some portion, if not all, of Logan Street North was unimproved; however, the record does not demonstrate whether an official survey was conducted in relation to this lawsuit.

In July 2021, plaintiffs filed a complaint seeking a declaratory judgment to quiet title to riparian rights in Lake Missaukee. Plaintiffs also contended that because defendant held the road in trust for the public, it lacked "the right or authority to plan, erect, and install permanent barriers

and blockades, unrelated to vehicle traffic control, at the road-ends of publicly dedicated streets when terminating at the water's edge of Lake Missaukee." Plaintiffs requested that the court declare them "riparians," declare that defendant did not hold a fee to Logan Street, and declare that defendant lacked authority to construct the barriers or blockades at the road end. Defendant answered, admitting that it planned to erect and install permanent barriers and blockades at the road ends of publicly dedicated streets terminating at the water's edge of Lake Missaukee, but denied that plaintiffs held any riparian rights to the lake.

Plaintiffs moved for partial summary disposition under MCR 2.116(C)(10), requesting that the trial court declare that plaintiffs had riparian rights to Lake Missaukee and that defendant did not own the fee to Logan Street North. Defendant requested that the court deny plaintiffs' motion for partial summary disposition and grant defendant's motion for summary disposition under MCR 2.116(I)(2). The trial court granted plaintiffs' motion and denied defendant's motion, holding that the plain language of the plat demonstrated that plaintiffs' Lot 5 ran to the boundary of the plat, which included the 17.2 feet along the edge of Lake Missaukee. The court also held that defendant held a base fee to the disputed area.

At some point after this ruling, plaintiffs constructed a private dock at the road end. Almost a year later, plaintiffs filed another motion for summary disposition under MCR 2.116(C)(10) on the remaining issue of whether defendant was permitted to erect permanent barriers at the end of Logan Street. Defendant argued that its control over Logan Street permitted it to construct its proposed fence because its actions were within the scope of the plat's dedication of the road for public use. Defendant also challenged the trial court's earlier ruling concerning plaintiffs' riparian rights and asserted that plaintiffs were illegally occupying the road end. Defendant requested that the court deny plaintiffs' motion, order that plaintiffs did not have riparian rights in the road end, order that plaintiffs' dock and hoist be permanently removed, and grant defendant summary disposition under MCR 2.116(I)(2) and declare that it may erect the fence.

The trial court, in addition to deciding the additional fence issue, determined that it would reconsider its previous ruling that Lot 5 was riparian.[1] The trial court wrote,

> In the present case, a simple visual inspection of the plat shows that Lot 5 does not touch the water. Therefore, it would be easy to conclude that lot 5 is not generally riparian. What makes this case so difficult . . . is the language on the plat dedication itself, the shape of Lot 5, and the shape of the western end of Logan Street North which abuts the lake.

According to the trial court, the plain description of a lot will generally control, and the metes-and-bounds description of Lot 5 in the plat showed that the lot did not include riparian rights; however, there was "other language on the plat that arguably raises some partial ambiguity." Specifically, Lot 5's metes and bounds contradicted language that the lot fronted the boundary of the plat, which would include Logan Street North. And the trial court noted that the plat "dedicated

---

[1] The trial court noted that the only questions presented to it were whether plaintiffs held riparian rights and whether defendant may erect its proposed fencing across Logan Street, declining to rule on the issue regarding plaintiffs' dock.

this street for public use." It also highlighted the pluralized word of "lots" when the plat described the lakefront properties extending to the water's edge, even though only Lot 6 actually extended to the water based on the lots' metes and bounds.

Resolving this ambiguity at least in part, the trial court determined that "the owners of Lots 1 through 5, because they are bound by Logan Street North, enjoy the fee in the soil the entire way across Logan Street North." The court then stated:

> The key question for the Court is, what, if any, fee does Lot 6 have across Logan Street North. Based on metes and bounds descriptions and drawing of the plat, Lot 6 abuts the west end of Logan Street North for about 27.8 feet. If Lot 5's fee across Logan Street North runs from its most western point south across Logan Street North to Logan Street South, that leaves the fee over a small trapezoidal shaped piece at the most western end of Logan Street North in question. It would be 27.8 feet, by 17.2 feet, by 33 feet, by about 9 feet, which appears to be entirely beachfront. The fee either belongs to Lot 5 or Lot 6 as clearly fee [sic] must be held by someone. This is where the intent of the platter is begged.
>
> When the Court issued its order on November 15, 2022, to sua sponte call to question its ruling on the initial motion for partial summary disposition, it in effect gave Defendant another opportunity to address this point. The question begged of the Court to Defendant was to convince the Court that fee of trapezoidal end belonged to Lot 6.[2] The Defendant provided no evidence that would support that was the intent of the platter.
>
> What did the Defendant provide? It argued that because the deed does not designate Lot 5 as anything beyond its metes and bounds, it is not riparian. . . .
>
> This Court has struggled as to why the platter defined Lot 5 by metes and bounds yet then said in a note that Lot 5 fronted on the boundary of the plat. The Court, however, has struggled even more with the theory that the platter intended to provide Lot 6 the fee over the tiny trapezoidal piece at the end of Logan Street North. This portion is simply part of the beachfront. Lot 6 already has beachfront property. Thus, it is inconceivable that the platter would leave the fee under the end of Logan Street North to anyone other than Lot 5. As Lot 5 fronts the boundary of the plat, it is clear the intent of the platter was that Lot 5 holds the fee under Logan Street North to the water's edge. [Footnote omitted.]

The trial court ultimately concluded that plaintiffs held riparian rights to Lake Missaukee because they held "the fee simple under Logan Street North, across the relevant portion [of] Logan Street South, and to the water's edge of Lake Missaukee." It also noted, however, that plaintiffs'

---

[2] The trial court also noted that neither party requested that the owners of Lot 6 be made parties to the suit.

fee across Logan Street North "would be subject to any other rights granted within the scope of the dedication of Logan Street North for the use of the public."

With respect to whether defendant was permitted to install the fence, the trial court concluded that defendant held a base fee in trust for public use to Logan Street North, and therefore had supervision and control over the road. The court specifically cited cities' "supervision and control over all public streets and public grounds," "authority to lay out such public streets whenever they deem the same a public improvement, "power to improve and repair their streets," and that "cities may regulate use of public streets where there are rights of travel and passage therein," including "the authority to regulate traffic and prohibit, prevent, remove, and abate all nuisances therein." Therefore, according to the court, the proposed fence was "permissible, not unreasonable, and a conceivable intended use at the time of the dedication of the plat."

The trial court granted plaintiffs' motion for partial summary disposition but denied plaintiffs' motion and granted defendant's motion for summary disposition on the remaining issue. This appeal followed.

## II. DEFENDANT'S APPEAL

Defendant contends the trial court erred when it held that plaintiffs had riparian rights at their property. Because we conclude that summary disposition was improper on this issue, we reverse and remand for further proceedings consistent with this opinion.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 60. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Under MCR 2.116(C)(10), the moving party has the initial burden of supporting its position with evidence. *Holder v Anchor Bay Investments, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364401); slip op at 2. "The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. (quotation marks and citation omitted). "The nonmoving party 'must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists.' " *Id*. (citation omitted). Summary disposition under MCR 2.116(I)(2) is appropriate if the opposing party, rather than the moving party, is entitled to judgment as a matter of law. *Local Area Watch v Grand Rapids*, 262 Mich App 136, 142; 683 NW2d 745 (2004). Claims of riparian rights are common-law claims and are reviewed de novo by this Court. *Holton v Ward*, 303 Mich App 718, 725-726; 847 NW2d 1 (2014). A determination of the extent of a party's rights under a plat dedication is a question of fact that is reviewed for clear error. *Dyball v Lennox*, 260 Mich App 698, 703; 680 NW2d 522 (2004).

The interpretation of a property instrument is subject to well-established rules of construction. *Wiggins v Burton*, 291 Mich App 532, 552; 805 NW2d 517 (2011). When interpreting a plat, this Court seeks to effectuate the intent of the plattor. *Id*. If the language of a legal instrument is plain and unambiguous, it is to be enforced as written, and no further inquiry is

permitted. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). In contrast, if the language is ambiguous, the trial court may consider extrinsic evidence to determine the dedication's scope. *Id.* A legal instrument is "ambiguous when its provisions irreconcilably conflict." *In re Estate of Koch*, 322 Mich App 383, 398; 912 NW2d 205 (2017). When an instrument is ambiguous, summary disposition is generally inappropriate because there remains a question of fact for the jury. *Id.* "When a person purchases property that is recorded in a plat, the purchaser receives both the interest described in the deed and the rights indicated in the plat." *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016).

In the present case, the trial court erred by granting plaintiffs' motion for summary disposition because there was a genuine dispute of material fact regarding whether Lot 5 was intended to extend to the water's edge. Specifically, because the plat presents an ambiguity unresolved by the extrinsic evidence, it was inappropriate to decide this dispute on a motion for summary disposition.

Plaintiffs' deed stated that they owned "Lot 4, EXCEPT the East 90 feet thereof AND All of Lot 5 in the plat of Eising's Addition to the City of Lake City." The plat then laid out Lots 4 and 5 with metes-and-bounds descriptors. The plat also provided that Lot 5 "fronts" on the boundary of the plat. The trial found that this conflicting language of the plat was partially ambiguous, but determined Lot 5's boundaries regardless, holding that Lot 5 extended to the western end of Logan Street North and to the edge of the lake because "it is inconceivable that the plattor would leave the fee under the end of Logan Street North to anyone other than Lot 5."

However, the language in the plat was ambiguous because it created an irreconcilable conflict regarding the property lines of Lot 5. See *In re Estate of Koch*, 322 Mich App at 398. By its metes-and-bounds description, Lot 5 bordered the northern edge of Logan Street and excluded Logan Street North. Yet the plat language also stated that Lot 5 "fronts" on the boundary of the plat, which ostensibly extended the lot's borders beyond its metes-and-bounds description to at least the other side of Logan Street North. The trial court ultimately held that this language was meant to convey the fee *underneath the road* to Lot 5. But the plat's plain language does not suggest that the note providing that Lot 5 "fronts" on the boundary of the plat had any relation to its interest in Logan Street. This conclusion is heightened by the fact that the plat also designated that Lot 7 "fronts" at the boundary of the plat, yet Lot 7 is in the northwest corner of the plat and does not border Logan Street or the lake. It is also heightened by the plat's dedication for public use of the drives and streets depicted therein, including Logan Street North. The plat appears to designate two different boundaries for Lot 5: its metes-and-bounds description and the boundary of the plat.

Because the determination of the extent of a party's rights under a plat dedication is a question of fact and Lot 5's boundaries were ambiguous, there was a genuine issue of material fact regarding the boundary lines of Lot 5, and summary disposition was therefore inappropriate. *Dyball*, 260 Mich App at 703; *In re Estate of Koch*, 322 Mich App at 398.

We note some additional points concerning this issue. First, the only extrinsic evidence presented to resolve the plat's ambiguity—evidence that plaintiffs did not pay lakefront property taxes for their property, and that Logan Street North remained undeveloped and was used as an extension of the adjacent lot owners' properties—is irrelevant. Specifically, these facts shed no

light on the platter's intent from 1966.  We also sympathize with the trial court's "confusion" here in interpreting the plat and determining the property rights at issue given the plat's clear ambiguity and the dearth of any relevant extrinsic evidence regarding the plat's intended meaning. Accordingly, although it was improper to resolve this issue as a matter of law, we find no issue with the trial court's reasoning had it made the same decision under the same evidence as the trier of fact after a bench trial.

Indeed, if Lot 5 does extend to the plat's front boundary and include Logan Street North, plaintiffs would have riparian rights to Lake Missaukee.  This is because plaintiffs' property would include the westernmost portion of Logan Street North that directly borders the lake.[3]  And regardless of the plat's apparent public dedication of Logan Street North, plaintiffs would retain a vested interest in this land.  *2000 Baum Family Trust v Babel*, 488 Mich 136, 152; 793 NW2d 633 (2010) (property owners abutting a street retain a revisionary interest therein).

Defendant is correct that roads terminating at a body of water like that here are treated differently for the purpose of determining riparian rights than roads running parallel to such bodies. However, this distinction is related more so to the public's limited right of access to water associated with roads ending at the water, and thus distinct from whether plaintiffs' property generally includes riparian rights.

First, although (1) "[p]ublic ways which terminate at the edge of navigable waters are generally deemed to provide public access to the water" and (2) "[a] city, on behalf of its citizens, is entitled to build wharves at the end of such streets to aid the public's access," this right "does not depend on whether the public owns the fee in the way."  *Thies v Howland*, 424 Mich 282, 295-296; 380 NW2d 463 (1985) (citations omitted).  "Rather, it is based upon the presumption that the plattor intended to give access to the water and permit the building of structures to aid in that access.  Any dock which is constructed at the end of a common way must be made available for the use of those to whom the way is dedicated."  *Id*. at 296 (citations omitted).

Consistent with these principles, a dedicated public road terminating at water's end does not necessarily deprive, divest, or preclude riparian rights for a property owner adjacent to the end of the road; instead, property owners adjacent to such roads may have riparian rights to the water, with the public also having limited riparian rights to the same only as consistent with the particular dedication at issue.  Our Supreme Court in *McCardel v Smolen*, 404 Mich 89, 97; 273 NW2d 3 (1978), stated:

---

[3] Riparian or littoral rights are special property rights to make use of water in a waterway adjoining the owner's property.  *Dyball*, 260 Mich App at 705; see also *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010).  These rights include the right to construct and maintain a dock and the right to permanently anchor boats off the shore.  *2000 Baum Family Trust*, 488 Mich at 166.  A parcel is considered "riparian land" if it "includes therein a part of or is bounded by a natural water course."  *Id*. (quotation marks and citation omitted).  It is generally an "indispensable requisite that riparian land actually touch the water."  *Id*. (quotation marks and citation omitted).

[A]ccess to and from the water is a riparian or littoral right. Assuming, *arguendo*, that the plaintiffs own the riparian or littoral rights as an incident of front lot ownership, it does not follow necessarily that the public does not have the right to enter and leave the water from the boulevard. The question to which the parties have devoted most of their attention in this litigation (ownership of the riparian or littoral rights) is, again, not dispositive. The question whether the public has the right to enter and leave the water from the boulevard . . . depends, rather, on the scope of the dedication. [Footnote omitted.]

The Court elaborated as follows:

In the instant case, the right of the public to enter and leave the water from the boulevard thus depends on the scope of the dedication, not on who owns the riparian or littoral rights. The plaintiffs may own such rights (including, for example, the right to erect and maintain docking and mooring facilities), and yet there may have been a dedication to the public of a right to lounge and picnic on the boulevard and to enter and leave the water for swimming and boating purposes. [*Id.* at 101.]

Accordingly, the key question is not whether plaintiffs have riparian rights to Lake Missaukee (although plaintiffs' alleged riparian rights remain relevant), but whether if plaintiffs have such rights, in what way were they affected by the purported public dedication of Logan Street North in this case. We primarily address this in the following section.

Moreover, given evidence that Logan Street North remains undeveloped, it is unclear whether any public dedication was ever accepted, see *2000 Baum Family Trust*, 488 Mich at 150 ("a statutory dedication requires the same acceptance by the public as a dedication at common law")—and if so, whether the road was subsequently vacated or abandoned between the 1960's dedication and the relatively recent fence installation there, see *id.* at 156 ("title to a street that is vacated or abandoned vests in the owners of the lots abutting the street"). These issues should be addressed by the parties and court on remand.[4]

Finally, defendant contends that plaintiffs are currently violating MCL 324.30111b(2) because they constructed a private dock that was not authorized by defendant. Although there was no counterclaim challenging the dock, defendant contested plaintiffs' ownership of riparian rights and asserted that it held control of the road end for public access. Requesting removal of the dock was within the scope of the lawsuit, and the trial court should have addressed the apparent conflict

---

[4] We do acknowledge evidence in the record that defendant took various steps throughout the years to facilitate the public's use of the lake, but these seemingly related to the developed Logan Street south of Logan Street North, the area at issue here. And although defendant claims that Lot 6 would take the westernmost portion of Logan Street North touching the water if that street was vacated, this position lacks merit. Indeed, while Lot 6 does border a small portion at the very end of Logan Street North, it is not an adjacent property in the same sense as Lots 1 to 5 that all share a full boundary running perpendicular to the road. We also agree with the trial court's general reasoning that nothing in the plat shows any intention that Lot 6, which already directly fronts the lake, extends over any portion of Logan Street North.

between the plaintiffs' dock and the plat's dedication of Logan Street North for use of the public. See *McCardel*, 404 Mich at 97, 101. Because "the law of dedication applies, the use for which the dedication was made must determine the extent of the right parted with by the owner of the land and acquired by the public." *2000 Baum Family Trust*, 488 Mich at 186 (citations omitted). This is especially apparent considering the language of MCL 324.30111b, which forbids private docks at road ends unless expressly authorized by a recorded deed or dedication. Therefore, in resolving this dispute on remand, the circuit court should address the scope of the plat's dedication of Logan Street North for use of the public and whether plaintiffs' dock violates MCL 324.30111b.

### III. PLAINTIFFS' CROSS-APPEAL

Plaintiffs cross-appeal, arguing that the trial court improperly held that defendant was permitted to construct its proposed fencing at the Logan Street road end. We disagree in part.

The dedication of a road to a local government transfers to them "nominal title" or a "base fee." *2000 Baum Family Trust*, 488 Mich at 163. "[W]hether the fee is nominally in county, city, or private owners, the public control is only in trust to secure to the public those rights of a public nature that exist in public ways of that kind." *Id*. at 154 (quotation marks and citation omitted). In the present case, because the plat was approved in 1966, the controlling plat statute was 1929 PA 172, repealed by 1967 PA 288, which provided, in relevant part:

The plat so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be herein designed for public use in the municipality with the limits of which the plan patter is included, in trust to and for the uses and purposes therein designated and for no other use or purposes whatsoever. [1929 PA 172 § 50.]

"[T]he scope of a dedication of land to public use in a subdivision plat depends on the intent of the dedicator, and public ways that terminate at the water are presumed to have been intended to provide access to the water." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 96; 662 NW2d 387 (2003).

The members of the public who are entitled to access to navigable waters have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. The right of a municipality to build a wharf or dock at the end of a street terminating at the edge of navigable waters is based upon the presumption that the platter intended to give access to the water and permit the building of structures to aid in that access. The extent to which the right of public access includes the right to erect a dock or boat hoists or the right to sunbathe and lounge at the road end depends on the scope of the dedication. [*Id*. at 99-100 (quotation marks and citations omitted).]

Cities also may regulate the use of public streets "subject to the right of travel and passage therein." MCL 102.14. This includes the authority to regulate traffic, to prohibit nuisance, and "generally to prescribe and enforce all such police regulations over and in respect to the public streets, as may be necessary to secure good order and safety to persons and property in the lawful

use thereof; and to promote the general welfare . . . ." MCL 102.14. A municipality has "exclusive control" over a roadway in accordance with the use to which it was dedicated. *2000 Baum Family Trust*, 488 Mich at 154.

Plaintiffs argue that defendant's proposed fencing is unrelated to traffic control at the road end, which was dedicated only for public driving. Plaintiffs also assert that the fence invites the public to illegally use the shores of Lake Missaukee. Plaintiffs argue that road ends must be appropriated only to the uses of the dedication, and that aiding in the public's illegal activities at the shoreline was not within the scope of the dedication in the present case.

The trial court found that the installation of the fence was "similar to the historical use of the bollards and other restrictions placed on the road-end of Logan Street North by Defendant are permissible, not unreasonable, and a conceivable intended use at the time of the dedication of the plat." We agree in principle.

In the present case, the plat dedicated all streets "to the use of the public." According to the record, defendant's proposed project fencing was intended to aid the public's access to the water by allowing ingress and egress into Lake Missaukee through the opening in the fence. Plaintiffs offered no evidence that this project hampered the public's access to the water or that it was an unreasonable exercise of defendant's authority to control its public roads. See *2000 Baum Family Trust*, 488 Mich at 154; MCL 102.14. Plaintiffs assert that the fence may encourage activities at the road end that plaintiffs believe exceed the scope of the dedication; however, they offered no evidence to support this contention. Moreover, the trial court correctly held that this was not at issue in the case, because plaintiffs challenged only the construction of the fence in their complaint.

Whether lakeshore activities at the road end are permissible would depend on the scope of the dedication and the activities occurring at the road end at the time of the dedication, on which the trial court made no findings beyond that the road end was for public access to the water. See *Higgins Lake Prop Owners Ass'n*, 255 Mich App at 99-100. We also reiterate the existence of open questions concerning the boundary and associated riparian rights of plaintiffs' Lot 5, as well as the status and validity of the purported dedication of Logan Street North and whether this apparently undeveloped area has actually been used for public access. Because the scope of the dedication and its affect on plaintiffs' property rights depend on these issues, we remand this case in full for trial consistent with this opinion. At trial, the parties should address, and the court should resolve, three key issues: (1) the intended boundary and existence of any associated riparian rights concerning plaintiffs' property; (2) the validity and scope of the plat's purported public dedication of Logan Street North; and (3) if both parties have rights to the westernmost portion of Lake Street North and the waterline there, how these competing rights interact.

IV. CONCLUSION

In conclusion, the trial court erred when it granted partial summary disposition to plaintiffs because there remained a genuine dispute of material fact regarding whether the plattors intended for plaintiffs' Lot 5 to extend to the water's edge. The plat was ambiguous and its proper interpretation was a question for a trier of fact. If the plattors *did intend* for Lot 5 to extend to the water's edge, there remain questions regarding the conflict between plaintiffs' riparian rights, the

purported public dedication of Logan Street North and fence installation, and whether the construction of plaintiffs' dock violated MCL 324.30111b. See *McCardel*, 404 Mich at 97, 101.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Noah P. Hood
/s/ Adrienne N. Young