Mary D. DUMM, Appellee

v.

Mary DAHL, George Due and Dina Randa.

Appeal of Dina Randa Wadding.

Superior Court of Pennsylvania.

Argued Aug. 30, 2006.

Filed Nov. 13, 2006.

Reargument Denied Jan. 25, 2007.

Diane P. Adsit, Meadville, for appellant.

John C. Swick, Meadville, for appellee.

BEFORE: HUDOCK, BENDER and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Appellant Dina Randa Wadding appeals from the December 5, 2005 Order denying her motion for post-trial relief and adopting by reference the trial court's October 13, 2005 Memorandum.[1] After careful review, we reverse and remand for proceedings consistent with this Opinion.

¶ 2 The relevant facts and procedural history, as set forth in this Court's prior Memorandum, are as follows:

On January 23, 1965, the Cold Spring Acres Subdivision Plan No. 7 was recorded in Crawford County. The allotment plan divided the subdivision into

---

1. Appellant's notice of appeal from the December 5, 2005 Order denying her motion for post-trial relief is not proper; rather, the appeal lies properly from the entry of judgment. *See Fanning v. Davne*, 795 A.2d 388, 392 (Pa.Super.2002), *citing Johnston the Florist,* *Inc. v. TEDCO Const. Corp.*, 441 Pa.Super. 281, 657 A.2d 511 (1995). Pursuant to the praecipe filed by appellee, judgment was entered on the verdict on January 4, 2006. Record, No. 69.

individual residential lots with five areas designated as either "landing" or "boat landing" areas. All allotment owners have an easement on those five areas for the purpose of launching and retrieving of watercraft on Canadohta Lake, a lake which borders the subdivision. One of these five areas is located between lots 760 and 759 (easement property). The easement property is 15 feet wide and is approximately 140 feet in length. Appellee is the owner of lot 759, which is adjacent to the easement property. Mary Dahl is the owner of lots 763 and 764. George and Judith Due own lot 755, and Appellant owns lot 754. Prior to 1998, a dock (easement dock) was constructed on the easement property. The easement dock is not centered on the easement property. It sits on the eastern side of the easement, which is the side closer to Appellee's lot, and the easement dock extends into the water directly in front of Appellee's lot. The presence of boats moored to the easement dock almost eliminated Appellee's instant access to Canadohta Lake from the shoreline.

On February 18, 2000, Appellee filed a complaint in ejectment against Appellant, Ms. Dahl, and Mr. Due, in which she requested that the easement dock be removed from the easement property. Appellants, Ms. Dahl, and Mr. Due filed an answer, new matter, and counterclaim to quiet title, and they requested an equity injunction prohibiting Appellee from constructing a new dock on Appellee's property because the new dock would interfere with Appellant, Ms. Dahl, and Mr. Due's enjoyment of the easement dock.

Following a bench trial, on January 23, 2004, the trial court filed a memorandum and verdict, in which it found in Appellee's favor and ordered Appellant, Ms. Dahl, and Mr. Due to remove the easement dock. The trial court also found in Appellee's favor on Appellant, Ms. Dahl, and Mr. Due's counterclaim to quiet title, and it refused to grant the equity injunction requested by Appellant. Appellant, Ms. Dahl, and Mr. Due filed a timely post-trial motion in which they requested the court to enter a judgment notwithstanding the verdict. The trial court denied this motion and authored a memorandum in support of its denial on June 9, 2004. On June 17, 2004, Appellee praeciped the Crawford County Prothonotary to enter judgment upon the trial court's verdict, and, on that same day, judgment was entered. Appellant, Ms. Dahl, and Mr. Due filed a timely appeal from the judgment.[1] The trial court ordered Appellant to file a statement of matters complained of pursuant to Pa.R.A.P.1925(b), and Appellant complied. The trial court entered an order stating that it addressed the issues raised in Appellant's 1925(b) statement in its January 23, 2004 memorandum and its June 9, 2004 memorandum.

1. Ms. Dahl and Mr. Due discontinued their appeal.

*Dumm v. Randa,* 881 A.2d 893 (Pa.Super.2005) (unpublished Memorandum).

¶ 3 On appeal, we concluded the trial court erred by issuing a verdict in favor of appellee on Count II because "[it] did not include a cause of action that the easement dock encroached upon Appellee's right of access as a lot owner," and remanded with instructions for the trial court to address counts I and III.[2] *Id.* at 8; Record, No. 55.

2. Count I alleged that the dock interfered with appellee's quiet use and enjoyment of her property because the easement dock's extension into the water in front of her lot prevented appellee from building a dock of her own. Count III alleged that the easement

On remand, the trial court issued a Memorandum and Order on the matter on October 13, 2005. Record, No. 61. The trial court determined appellee's claim for interference with quiet enjoyment was not a cause of action but instead was a component of a cause of action, and the existence of the easement dock posed a significant harm to appellee and constituted a private nuisance. Trial Court Opinion, Spataro, J., 10/13/05, at 4–6. The court concluded appellant had no right to moor boats to the easement dock so as to impede appellee's private enjoyment of her property, and directed her to dismantle the dock or relocate it. *Id.*

¶ 4 On October 24, 2005, appellant filed a timely motion for post-trial relief, which was denied by the court on December 5, 2005. Record, Nos. 62, 68. Thereafter, on January 4, 2006, appellee filed a praecipe to enter judgment on the verdict dated October 13, 2005, and judgment was entered that same day. Record, No. 69. On February 7, 2006, appellant filed a notice of appeal from the December 5, 2005 Order denying her motion for post-trial relief. Record, No. 70. As noted, this appeal was improper and correctly lies from the entry of judgment on January 4, 2006. Appellee subsequently filed a motion to quash the appeal as untimely, but we denied this request on August 8, 2006 because the mandates of Pa.R.C.P. 236, **Notice by Prothonotary of Entry of Order or Judgment,** were not satisfied.[3]

¶ 5 On appeal, appellant raises four issues for our review:

1. Whether the trial court committed an error of law or an abuse of discretion when the Court found that the easement dock and boats moored to it was a private nuisance to Appellee.

2. Whether the trial court committed an error of law and an abuse of discretion when the trial court failed to find for Appellant in her quiet title counterclaim under an easement theory.

3. Whether the trial court committed an error of law or an abuse of discretion when it excluded evidence proffered by Appellant when the evidence consisted of a Department of Environmental Protection docking permit.

4. Whether the trial court committed an error of law or an abuse of discretion when it failed to enjoin Appellee from maintaining her dock in such a manner that prevents Appellant from using most of the eastern side of the Easement Dock.

Appellant's brief at 4.

██ ¶ 6 An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *Bowser v. Blom,* 569 Pa. 609, 615–616, 807 A.2d 830, 834 (2002) (citations omitted). Here, the court held "that the existence of the

dock was a private nuisance and caused appellee to suffer a material annoyance, inconvenience, and discomfort. *See* Complaint in Civil Action—Ejectment, 2/15/00; Record, No. 1.

3. Rule 236 provides, *inter alia,* that the prothonotary shall give immediate written notice of the entry of any order or judgment to each party's attorney of record, or each party, if

not represented by counsel, and that the notice shall include a copy of said order or judgment. *See* Pa.R.C.P. 236(a)(2). Here, review of the docket demonstrates that Rule 236 notice was not entered on the docket with respect to the January 4, 2006 judgment. Accordingly, appellant's February 7, 2006 notice of appeal was timely filed.

easement dock and boats moored to it, constitutes a significant harm to [appellee], that is to say that this is a harm of importance, involving more than a slight inconvenience or petty annoyance." Trial Court Opinion at 5. In so ruling, the court held:

> Plaintiff's interest extends beyond that of a mere allotment owner, as the ownership of her land is uniquely impacted by the existence of the easement dock in at least the following respects: a) the location of the easement dock significantly restricts Plaintiff's ability to construct a dock of her own that would permit her to moor and operate watercraft; b) Plaintiff's visual enjoyment of the lake, as a lakefront owner, is significantly obstructed, in that the predominant view she would have would be of watercraft, in this case a pontoon boat, owned by others that is within her field of vision from her own property.
>
> . . .
>
> The invasion is more than merely a personal discomfort or annoyance, but rather materially affects the Plaintiff's ability to enjoy her own property and to exercise her lawful right to install a dock of her own on the banks of her own property. This nontrespassory invasion is significant and the Plaintiff is within her rights in seeking to have this private nuisance abated.

Id. at 4, 6 (citation omitted).

¶ 7 Generally, a nuisance is the invasion of another's interest in the use and enjoyment of her land. *Harford Penn–Cann Service, Inc. v. Zymblosky*, 378 Pa.Super. 578, 549 A.2d 208 (1988). This Commonwealth follows the Restatement (Second) of Torts' definition of private nuisance. *See Karpiak v. Russo*, 450 Pa.Super. 471, 676 A.2d 270 (1996). Section 822 provides:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Rest.2d Torts § 822, **General Rule.** The Restatement indicates that a defendant is not subject to liability for an invasion unless it resulted in a significant harm to the complaining party. *Karpiak, supra* at 272. Significant harm is defined as "harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." Rest.2d Torts § 821F, **Significant Harm.**

¶ 8 We begin by noting that this case appears to be one of first impression, as we have not found a single reported case in this Commonwealth that addresses whether the use of a dock accessed via a public easement (easement dock) poses a significant harm to an adjacent owner's land and thus constitutes a private nuisance. Admittedly, an expansive reading of the Restatement definition of private nuisance could very well include appellee's claims, as "the concept of nuisance is broad enough to encompass virtually all harms." *Golen v. Union Corp.*, 718 A.2d 298, 300 (Pa.Super.1998) (citation omitted). Proper appellate review, however, requires we determine *"sensible limits to liability under this potentially sweeping concept."* *Id.* (emphasis added).

¶ 9 Following careful consideration, we reject the court's finding that the easement dock in question and its subsequent use by appellant constitutes a private nuisance. Additionally, we find the court erred in failing to enjoin appellee from

building and maintaining her dock in such a manner that prevents use of the eastern side of the preexisting easement dock.

¶ 10 Here, the subdivision at issue borders Canadohta Lake, a navigable body of water, and is divided into individual residential lots with five areas designated as "boat landing" areas. One of these five easement areas is located adjacent to appellee's property, and the easement dock at issue extends outward from the shoreline and partially encroaches upon a proportionately small section of the navigable water in front of appellee's lakefront property. The easement dock apparently was constructed by the parties' predecessors in title, and has been modified over the course of its existence to its permitted length of 50 feet. N.T., 1/8/04, at 4–6. Appellee, in turn and in an obvious ploy to preclude other subdivision residents from using the eastern side of the easement dock, constructed an L-shaped dock during the course of this litigation which extends from her property in a manner which prevents utilization of virtually all of the easement dock's eastern side. N.T., 1/7/04, 172–176.

¶ 11 It is well-settled that "if a body of water is navigable," as is the case here, "it is publicly owned and may only be regulated by the Commonwealth." *Pennsylvania Power & Light Co. v. Maritime Management, Inc.*, 693 A.2d 592, 594 (Pa.Super.1997). Thus, any purported ownership of land extending beneath Canadohta Lake would not afford any right superior to that of the public to use the waterway. *Id.* Furthermore, while clearly not binding on this Court, we note that in *Range v. Yurtinus*, A.D. No.1994–703 (April 11, 1995), Crawford County Common Pleas Judge Anthony J. Vardaro concluded that a dock on the end of an easement in Canadohta Lake was a reasonable use of that easement. *Id.* at 5. Here, each

property owner in the subdivision has an implied public easement over the area adjacent to appellee's property for the purpose of accessing Canadohta Lake, and the scope of the easement presumably includes the right to utilize a dock to effectuate the easement's intended purpose. The easement dock in question merely provides residents of the subdivision with a means of accessing the lake through the launching and retrieving of watercraft.

¶ 12 Appellee maintains, "[a]n integral component of purchasing a lakefront property is the ability to use and enjoy the waterway extending from the shoreline of the property," and appellant's continuous use of the easement dock "in a fashion that extends onto the waterway in front of [her] property, and ... prohibits the extension of [her] dock to its permitted length of 50 feet" interferes with her use and enjoyment of the property. Appellee's brief at 5. Additionally, appellee contends "her expectation of an unobstructed view of the lake, given her purchase of a lakefront property, is critical," and the mooring of boats in front of her lakefront property constitutes a nuisance. *Id.* at 7–9. We disagree.

¶ 13 Appellee's contention that the boats moored to the easement dock obstruct her lakefront view is disingenuous, as the record clearly indicates there are numerous docks on Canadohta Lake to which boats are presumably moored and the photographs of the easement dock at issue reveal that boats moored to the easement dock would have a minimal effect on her view of Canadohta Lake. Moreover, our review of the record clearly indicates appellee has not suffered the "harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." Rest.2d Torts § 821F, **Significant Harm.** As discussed, this Common-

wealth follows the Restatement (Second) of Torts in private nuisance situations. *Karpiak, supra.* The Restatement, §§ 821F and 822, provides a private citizen is liable in nuisance for an *unreasonable and intentional invasion* of the private use and enjoyment of another's land. While the type of harm sufficient to permit recovery for nuisance is generally a question for the factfinder, we have held, quoting the Restatement, that "[t]he law does not concern itself with trifles, and therefore, there must be a real and appreciable invasion of the plaintiff's interests before he can have an action" for a private nuisance. *Kembel v. Schlegel,* 329 Pa.Super. 159, 478 A.2d 11, 15 (1984) (citation omitted). Given the circumstances of this case, we do not find appellee has suffered an appreciable invasion of her interests sufficient to constitute a private nuisance.

■ ¶ 14 At trial, appellant testified as to the existence of the easement dock prior to appellee's construction of her dock, and stated she purchased her home in reliance on the right to utilize the easement dock.

N.T., 1/8/04, at 4. Additionally, appellant testified that she complied with appellee's request to remove various pieces of the easement dock which encroached upon appellee's property in 1999. *Id.* at 5–6. Our review of the dock location survey and numerous photographs of the shoreline admitted into evidence further indicates appellee had the option of constructing her dock to its permitted length of 50–feet by centering it in front of, or toward the other side of, her own property, but instead purposely chose to construct her dock within inches of the easement dock in a manner which rendered one side of each dock unusable. N.T., 1/7/04, at 175–176. We reject the notion that appellee, an owner of a common easement, can render the easement appreciably less convenient and useful for other co-owners. We conclude it would be inequitable to not enjoin appellee from maintaining her dock in such a manner as to render one side of the easement dock unusable. This is particularly true as the easement dock pre-existed appellee's acquisition of her property.[4]

4. The dissent, in a convoluted evaluation of the easement issue in relation to property ownership, would hold there is no right for legitimate users of the easement property to build a dock on the lake and yet the right to construct a dock is a right possessed by owners of adjoining waterfront property. *See* Dissenting Opinion at 870. This rationale would vitiate for all practical purposes the ability of non-lakefront property owners to access the lake via a dock (which, as the dissent acknowledges, is one of the reasons waterfront property is more costly than lots not abutting the water). *See Id.* at 871. Each purchase of property in the allotment plan carried with it easements to five specified areas designated as "landing" or "boat landing" areas. This provision fashioned an equitable means whereby all of the lot purchasers could have access to the water by boat, independent of private docks which could be constructed by individual waterfront property lot owners. Implied in this subdivision plan was that the easement areas were fixed to the subdivision for general use by the lot owners, *and* that the waterfront lot owners would not destroy the function of the easements/easement docks by building *private* docks which, as here, made the easement/easement dock virtually unusable. The trial court failed to apply the balancing and equitable rights inherent in the subdivision plan to avoid exactly what appellee caused in the manner she built her private dock, which was to a large degree vindictive and punitive toward neighboring subdivision lot owners. If all of the waterfront property owners adjoining the five easements did the same, it would destroy the property values of all. To adopt the dissent's position would mean that no property owner would have the right to build a dock anywhere on the waterfront and all lot owners, including appellee, would be required to dismantle their docks. Moreover, such a result would return waterfront users to the state of Hiawatha, being able to gain access to the water only by canoe.

¶ 15 Judgment reversed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 16 BENDER, J., files a Dissenting Opinion.

DISSENTING OPINION BY BENDER, J.:

¶ 1 I respectfully dissent because neither Appellant nor any other allotment owners have the right to construct or maintain a dock as a result of the easement in question. The majority cites our prior memorandum, which described the easement as follows:

> The allotment plan divided the subdivision into individual residential lots with five areas designated as either "landing" or "boat landing" areas. All allotment owners have an easement on those five areas for the purpose of launching and retrieving of watercraft on Canadohta Lake, a lake which borders the subdivision.

*Dumm v. Randa*, 881 A.2d 893 (Pa.Super.2005) (unpublished memorandum).

¶ 2 The Honorable John F. Spataro, the trial court judge, further described the easement in his first memorandum dated January 23, 2004.

> The land in dispute will be referred to as the "easement property." The dock in dispute which extends approximately 50 feet from the easement property will be referred to as the "easement dock." The easement dock is approximately 4 feet in width and is not centered on the easement property but rather is located more to the east, as more particularly illustrated in the drawing which appears below.
>
> · · ·
>
> There is no language appearing in the plan of lots that expressly defines the use for which the easement property was assigned. There are 5 areas throughout the allotment plan that are designated as either "landing" or "boat landing" that presumably are utilized for the launching and retrieving of watercraft. The manner in which the easement property is depicted on the plan of lots, along with the consistent testimony of several witnesses, leads to the conclusion that the easement property was intended to be used by all allotment owners, particularly those not having lakefront or canal fronting property, for purposes of accessing the lake.

Trial Court Memorandum, 1/23/04, at 2–3.

¶ 3 Judge Spataro further addressed the easement in his second memorandum dated October 13, 2005.

> We begin with the obvious. The [Appellants] and their predecessors in title constructed and have maintained a dock, affixed to land that they do not own and extending into waters that they do not have an independent right to assert a possessory interest in. As previously held by this Court (unaffected by the remand order of the Superior Court), the [Appellants] have not obtained a prescriptive rights to maintain their dock.

Trial Court Memorandum, 10/13/05 at 4.

¶ 4 Appellant's theory and the majority's reasoning both rest on the fact that Appellant has a right to construct and maintain a dock. That is not the case. As the trial court found, based upon written documents and recorded maps, Appellant and other allotment owners have an easement which permits them to launch and retrieve watercraft on Canadohta Lake. No deed or other evidence was produced that provided for Appellant and other allotment owners to have the right to construct and maintain docks, which given the width of the easement, could interfere with the launching and retrieving of watercraft on Canadohta Lake. Property rights cannot be conjured

up because one wants the right. The right to launch and retrieve watercraft is common on bodies of water throughout our nation. Many municipalities bordering bodies of water have public launching areas which give watercraft owners the right to launch and retrieve their watercraft. They do not give citizens the right to build docks on the body of water. If that were the case, many docking easements would soon become unusable because docks would be constructed where the easement meets the water.

¶ 5 Likewise, the right to construct a dock is a right possessed by owners of waterfront property. That is one of the reasons waterfront property is more costly than lots not abutting the water. The majority errs in its reasoning in that the easement implies that the right of access includes the right to a dock. *See* Majority Opinion at 868. Such a presumption has no place in property law and would be an unworkable system. Access to bodies of water, including launching and retrieving watercraft, requires free access to the body of water. If docks are built at the end of access easements, it negates the access the easement provides.

¶ 6 Accordingly, I would affirm the decision of the trial court.