J-A24035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALAN FORREST IMHOFF AND KAREN R. IMHOFF, HIS WIFE, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : | |
| GARY A. DEEMER AND DIANE M. DEEMER, HIS WIFE | : : | No. 303 WDA 2017 |

Appeal from the Judgment entered March 14, 2017
in the Court of Common Pleas of Westmoreland County,
Civil Division, No(s): 7094 of 2013

BEFORE:  MOULTON, SOLANO and MUSMANNO JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED DECEMBER 12, 2017**

Alan Forrest Imhoff ("Forrest") and Karen R. Imhoff, his wife (collectively, "the Imhoffs"), appeal from the Judgment entered against them, and in favor of Gary A. Deemer ("Gary") and Diane M. Deemer, his wife (collectively, "the Deemers"), following a non-jury trial.[1]  We affirm.

---

[1] The Imhoffs purport to appeal from the November 30, 2017 Order denying their Post-Trial Motions.  However, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions." *Croyle v. Dellape*, 832 A.2d 466, 470 (Pa. Super. 2003) (citation omitted).  Here, the Imhoffs filed a Notice of Appeal on February 28, 2017, before judgment was entered. On March 9, 2017, this Court issued a Rule to Show Cause, directing the Imhoffs to provide proof, within 14 days, that judgment had been entered. On March 14, 2017, the Imhoffs filed a Praecipe for entry of judgment, and the Prothonotary entered judgment the same day.  A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction.  *See Drum v. Shaull Equip. and Supply Co.*, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001).

The Imhoffs own and reside at property located at 2001 Route 119 North in Hempfield Township, Greensburg, Pennsylvania. The Deemers own and reside at the neighboring property, located at 2005 Route 119 North. Both properties are zoned for agricultural use.

In December 1999, the Deemers obtained a building permit from Hempfield Township to construct a 10-foot by 40-foot by 30-foot barn on their property. The barn was built in early spring of 2000, and is used to house the Deemers' horses. Additionally, the ground was leveled to create an outdoor riding arena for their horses.

In December 2003, the Deemers obtained a building permit to construct an addition to their home. The Deemers then obtained a building permit in April 2005 to construct 30-foot by 40-foot detached garage. This project required some excavation to level the area, but no soil was relocated toward the Imhoffs' property.

In June 2012, the Deemers applied for a zoning permit to construct a 70-foot by 100-foot indoor riding arena for their horses, in the same location where the outdoor riding arena had been. The application was granted on June 12, 2012. Excavation for the indoor riding arena commenced in July 2013, and construction began in August 2013. As a result of the excavation, some soil was pushed toward the Deemers' house to make a more accessible driveway.

On August 28, 2013, there was a heavy rainfall. According to the Imhoffs, the rainfall caused water, soil, debris, and silt to flow from the Deemers' property onto the Imhoffs' property, flooding the Imhoffs' yard, and clogging the culvert on their property. The following day, after a conversation with Forrest, Gary constructed a silt fence between the two properties.

On December 17, 2013, the Imhoffs filed a Complaint, alleging claims of private nuisance, ordinance violations, and a violation of state law. The Deemers filed an Answer and New Matter on February 13, 2014. The Imhoffs filed a Reply on March 18, 2014.

The case proceeded to a non-jury trial on August 1-2, 2016. On the first day of trial, the trial judge visited the subject properties with counsel for both parties. Following the non-jury trial, the trial court directed the parties to file their proposed findings of facts and conclusions of law, and a brief in support thereof. Both parties complied.

On November 7, 2016, the trial court filed an Order and accompanying Opinion, finding in favor of the Deemers, and against the Imhoffs as to the private nuisance and ordinance violation claims. Additionally, the trial court ordered the Deemers to keep and maintain their silt fence.

The Imhoffs subsequently filed Post-Trial Motions. The trial court ordered the Imhoffs to file a brief in support of their Post-Trial Motions, and ordered the Deemers to file a responsive brief. Both parties complied. The

trial court held oral argument on the matter, and subsequently denied the Imhoffs' Post-Trial Motions on January 30, 2017. On February 16, 2017, the Imhoffs filed a Notice of Appeal.

On appeal, the Imhoffs raise the following issues for our review:

1. Did the [trial c]ourt err as a matter of law in the interpretation of the Hempfield Township Ordinance Chapter 87-56 [(the Ordinance")]?

2. Did the [trial c]ourt err in failing to find that the activity of the [Deemers] created a private nuisance to [the Imhoffs]?

Brief for Appellants at 17.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation, brackets and ellipses omitted).

In their first claim, the Imhoffs contend that the trial court erred in its interpretation of the Ordinance.[2]  Brief for Appellants at 22.  The Imhoffs argue that the Deemers' horse barn and the riding arena both constitute "structures for animal raising and care," and therefore, they must be set

---

[2] During the non-jury trial, the parties stipulated to, and introduced into evidence, a copy of the Ordinance, which was in effect at the time of trial. The Ordinance provides as follows:

**Ch. 87-56.  Agricultural Uses**

> Structures for animal-raising and care.  Feed lots, fenced runs, pens and similarly intensively used facilities or structures for animal raising and care shall not be located within 150 feet of a neighboring property.

Hempfield Township Zoning Ordinance Ch. 87-56; **see also** Plaintiff's Exhibit 1; N.T., 8/1/16, at 7-8 (wherein the parties indicated that they had stipulated to the relevant Ordinance, and a copy of the Ordinance was admitted into evidence).

back 150 feet from the Imhoffs' property. *Id.* at 23.[3] Additionally, the

Imhoffs claim that the Deemers' doghouse, which is closer to their property

---

[3] The Imhoffs did not specifically allege that the indoor riding arena violates the Ordinance's setback requirement in their Complaint, Reply, or Post-Trial Motions. Accordingly, this claim is waived, despite the Imhoffs' discussion of the issue in their Brief in Support of Post-Trial Motions. *See* Pa.R.C.P. 227.1 (b)(2) (providing that "post-trial relief may not be granted unless the grounds therefore … are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived…."); *see also Siculiento v. K & B Amusements Corp.*, 915 A.2d 130, 132-33, n.2 (Pa. Super. 2006) (concluding that, even though appellants raised their claim in their brief in support of the post-trial motion, the claim was waived on appeal because appellants failed to specifically raise the claim in their post-trial motion); *Diamond Reo Truck Co. v. Mid-Pacific Indus., Inc.*, 806 A.2d 423, 428 (Pa. Super. 2002) (stating that "[i]f an issue has not been raised in a post-trial motion, it is waived for appeal purposes."). In their Complaint, the Imhoffs argued that the zoning permit authorizing the construction of the indoor riding arena is null and void because construction had not been commenced within 90 days. *See* Complaint, 12/17/13, ¶ 9. In its Opinion, the trial court noted that, pursuant to Hempfield Township Zoning Ordinance § 41-13, work authorized by a building permit must be commenced within 6 months of obtaining the permit. *See* Trial Court Opinion, 11/7/16, at 6. Nevertheless, the trial court determined that the riding arena was built in accordance with Hempfield Township requirements "since the permit was never required to be relinquished, and because the [o]rdinance requires action by the Township that was never taken[.]" *Id.* at 7.

than the riding arena, violates the Ordinance. *Id.*[4] The Imhoffs assert that the use of the word "or" in the Ordinance signifies that the trial court did not have to consider whether the buildings were "intensively used facilities," so long as it determined that the buildings are "structures for animal raising and care." *Id.* at 24-25. The Imhoffs ask this Court to order the removal of the barn, riding arena and doghouse from the Deemers' property. *Id.* at 29.

Regarding the interpretation of an ordinance, our Supreme Court has explained that,

> [l]ike statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See* 1 Pa.C.S.[A.] § 1921. Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. *See id.*; 1 Pa.C.S.[A.] § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage). Alternatively, when the words in an ordinance are not explicit, the legislative body's intent may be ascertained by considering, among other things, the ordinance's goal, the consequences of a particular interpretation of the ordinance, and interpretations of the ordinance by an administrative agency. *See* 1 Pa.C.S.[A.] § 1921. Furthermore, in determining the

---

[4] The Imhoffs likewise failed to allege that the Deemers' doghouse is subject to, and violates, the Ordinance's setback requirement in their Complaint, Reply, or Post-Trial Motions. Accordingly, this claim is waived. *See* Pa.R.A.P. 302; *see also Diamond Reo Truck Co.*, 806 A.2d at 428. Moreover, the trial court stated that it

> cannot agree that the Ordinance applies to the [doghouse,] which, in this case, is simply a fenced-in area where [the Deemers] are able to let their dog out to play. There was no evidence that the dog is housed in this area at all times or that the [doghouse] is large enough to have required a building permit.

Trial Court Opinion, 11/7/16, at 5.

- 7 -

proper interpretation of an ordinance, courts and agencies shall also presume that the legislative body "[did] not intend a result that is absurd, impossible of execution or unreasonable." **See** 1 Pa.C.S.[A.] § 1922; **County of Allegheny v. Moon Twp. Mun. Auth.**, 543 Pa. 326, 671 A.2d 662, 666 (1996).

**Bailey v. Zoning Bd. of Adjustment of City of Phila.**, 801 A.2d 492, 502 (Pa. 2002).

Here, the trial court determined that the barn is not an "intensively used facility or structure for animal raising and care." Trial Court Opinion, 11/7/16, at 5-6; **see also id.** at 4 (wherein the trial court noted that it "was not provided with definitions with regard to [the Ordinance,] and could find none that were applicable."). Additionally, the trial court concluded that "[e]ven if the barn could be viewed as being intensively used, [the Imhoffs] failed to establish that the location of the barn[,] in fact[,] violates the 150-foot setback requirement." **Id.** at 5; **see also id.** at 4 (wherein the trial court stated that it "[could not] tell from the record or from the Exhibits what distance the barn is from the [Imhoffs'] property line.").

Upon review, we conclude that the Imhoffs failed to establish that the barn violates the 150-foot setback requirement. As the trial court stated in its Opinion, the indoor riding arena is set back 35 feet from the Imhoffs' property line. **See id.** at 5; **see also** Exhibit 5. Additionally, the arena itself, which is situated between the Imhoffs' property line and the barn, is a 70-foot by 100-foot structure, and the longer sides are perpendicular to the Imhoffs' property line. **See** Exhibit O. Accordingly, as the trial court

determined, "the barn is at a minimum 135 feet from [the Imhoffs'] property[.]" Trial Court Opinion, 11/7/16, at 5. We also observe that the indoor riding arena does not abut the barn, and there is a breezeway between the two buildings. *See* N.T., 8/2/16, at 179; *see also* Exhibit O. Therefore, because the Imhoffs have failed to present measurements or any other evidence to establish that the 150-foot setback requirement had not been satisfied, we discern no error in the trial court's determination that the construction of the barn did not violate the Ordinance. Thus, the Imhoffs are not entitled to relief on their first claim.

In their second claim, the Imhoffs argue that the trial court erred in concluding that the Deemers had not created a private nuisance. Brief for Appellants at 25. The Imhoffs point to the testimony of John Joseph Cenkner, Jr. ("Cenkner"), a licensed engineer and land surveyor in Pennsylvania and Ohio, who was qualified as an expert at trial. *Id.* The Imhoffs assert that, according to Cenkner, the Deemers' property was built up, and a swale was removed, during the erection of the riding arena, and that as a result, water is forced toward the Imhoffs' property. *Id.* at 25-27. The Imhoffs contend that Cenkner's conclusions suggest that Gary lied when he testified that he did not bring truckloads of dirt to his property during construction of the riding arena. *Id.* at 26-27. The Imhoffs argue that the

flow of water, dirt, and manure onto their property is an unreasonable use of the Deemers' property. *Id.* at 28.[5]

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." RESTATEMENT (SECOND) OF TORTS § 821D; *see also Dumm v. Dahl*, 913 A.2d 863, 867 (Pa. Super. 2006) (stating that "[t]his Commonwealth follows the RESTATEMENT (SECOND) OF TORTS' definition of private nuisance."). Section 822 provides as follows:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of the land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

RESTATEMENT (SECOND) OF TORTS § 822.

Moreover,

> in Pennsylvania, specialized rules have been developed as to when an upper landowner may be liable for the effects of surface water running off its property. Our Supreme Court has held that, "[b]ecause water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient

---

[5] We observe that the Imhoffs failed to set forth the relevant law regarding liability for private nuisance, with the exception of the Pennsylvania Law Encyclopedia's definition of nuisance. Additionally, the Imhoffs failed to cite to any case law in support of their claims, and, despite their reliance on Cenkner's testimony, they provided only one citation to the record. *See* Pa.R.A.P. 2119(a) (requiring that each point in an argument contain "such discussion and citation of authorities as are deemed pertinent."). Although we could deem the Imhoffs' second issue waived, *see Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006), we decline to do so.

or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior." ***Chamberlin v. Ciaffoni***, [96 A.2d 140, 142 (Pa. 1953)], quoting ***Kauffman v. Griesemer***, 26 Pa. 407[, 413] (Pa. 1956). Therefore, "an owner of higher land [is] under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other." ***Chamberlin***, 96 A.2d at 142.

Notwithstanding the above, "[t]he right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities." ***Pfeiffer v. Brown***, [30 A. 844, 845 (Pa. 1895)]. Thus, if the upper landowner "alters the natural conditions so as to change the course of the water, or concentrate[s] it at a particular point, or by artificial means [] increase[s] its volume, he becomes liable for any injury caused thereby." ***Id.*** In other words, it is "only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury." ***Lucas v. Ford***, [69 A.2d 114, 116 (Pa. 1949)].

***Youst v. Keck's Food Serv., Inc.***, 94 A.3d 1057, 1073 (Pa. Super. 2014) (footnote omitted).

Cenkner testified at trial that his survey crew prepared a boundary survey of the adjoining property, and obtained Light Detection and Ranging ("LiDAR") mapping from the state's website. ***See*** N.T., 8/1/16, at 80. Cenkner testified that his crew located the iron pins marking the perimeter property lines and used the triangulation method to determine the position of the relevant buildings without entering the Deemers' property. ***See id.*** at 83. Cenkner created a contour map using the LiDAR mapping, topographic shots, and information collected during the boundary survey. ***See id.*** at 80-81. The contour map includes existing contours, which were downloaded from the state system, and proposed contours, which were estimated based

on pictures taken during the survey. *See id.* at 83. Cenkner testified that, in his opinion, a swale existed on the Deemers' property before the buildings were constructed. *See id.* at 83-84. Cenkner also testified that, in his opinion, the current grading of the Deemers' property "tend to push the water toward the Imhoff property." *Id.* at 84.

Gary testified that, when the barn was constructed, some dirt was excavated to level the surface, and to create an outdoor riding arena. *See* N.T., 8/2/16, at 158-59. Gary testified that in 2011, he completed some excavation work to create a four- to five-foot wall behind the barn, in order to prevent the horses from running to the top of the Deemers' property and injuring themselves. *See id.* at 173. Gary also testified that in order to accommodate the indoor riding arena, the area beside the barn was excavated, and the dirt was pushed toward the Deemers' house to make a more accessible driveway. *See id.* at 171-72. Additionally, Gary testified that the indoor riding arena was built where the outdoor riding arena had been, and the Deemers did not bring any soil onto the property for the construction of the outdoor riding arena. *See id.* at 181. According to Gary, after construction had been completed, the Deemers had sand delivered for the inside of the arena. *See id.* at 181-82. Gary testified that he installed gutters and a French drain on the indoor riding arena, and that the water is discharged away from the Imhoffs' property. *See id.* 183; *see*

*also id.* at 184 (wherein Gary indicated that the gutters on the barn also discharge water away from the Imhoffs' property).

Justin Hamill ("Hamill"), who performed excavation work for the Deemers' indoor riding arena, testified that he had leveled the area, and that he did not bring in additional soil or fill. *See id.* at 235-36. Hamill also testified that the extra dirt beside the barn was pushed forward to extend the slope in front of the barn. *See id.* at 236, 240.

Michael Weimer ("Weimer"), who installed French drains on the Deemers' property, testified that the French drains and downspouts on the barn and indoor riding arena are designed to direct water away from the Imhoffs' property. *See id.* at 243-44. Additionally, Weimer testified that one of the gutters from the riding arena feeds into a cistern, located between the riding arena and the barn, and that if the cistern fills, the water flows away from the Imhoffs' property. *See id.* at 246.

Gary Shaffer ("Shaffer"), who works for Applegate Services, testified that he performed a survey of the Deemers' property, and used GPS to collect true elevation data and coordinates to compare to the LiDAR maps. *See id.* at 249-50. Shaffer testified that the information he collected during the survey was given to another individual, Shawn McDonald ("McDonald"), to create a map. *See id.* at 250.

McDonald, a licensed civil engineer and certified professional in erosion control, testified that he prepared a drainage map of the Deemers' property.

*See id.* at 255-58; *see also id.* at 259-60 (wherein the drainage map was admitted into evidence as Exhibit D). Additionally, McDonald testified that he created a summary of the runoff flows tributary to the Imhoffs' culvert, and used a computer program to approximate the capacity of the culvert. *See id*. at 262-63; *see also id.* at 262 (wherein the runoff flow summary was admitted into evidence as Exhibit E); *id.* at 263 (wherein the culvert analysis report was admitted into evidence as Exhibit F). McDonald testified that, in a 100-year storm event, approximately one-quarter acre of the Deemers' property contributes water flow to the Imhoffs' culvert, and approximately 5.9 acres of the Deemers' property contributes water flow to the Imhoffs' culvert. *See id.* at 268, 273, 281-82; *see also id.* at 274 (wherein McDonald testified that calculating for a lesser storm would change the volume of flow to the culvert, but the relative proportion of water flow from the Deemer property as opposed to other property would remain the same). McDonald testified that the remainder of the Deemers' property drains away from the Imhoffs' property. *See id.* at 269. Additionally, McDonald testified that, in his opinion, water flow from the Deemers' property to the Imhoffs' property would have decreased since the indoor riding arena was constructed. *See id.* at 296.

The trial court determined that the Imhoffs failed to prove that the Deemers' construction created a private nuisance, stating the following:

> Based upon all of the testimony and evidence presented to the [c]ourt, the [c]ourt cannot find that [the Imhoffs] have

proven that [the Deemers'] construction constitutes a private nuisance. As pointed out by [the Deemers], it is still the law in Pennsylvania that the owner of land of higher elevation may make, if reasonable, "proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the other land." *Lucas*[, 69 A.2d at 116].

In the instant case, [the Imhoffs] have testified that their culvert has only overflowed on one occasion, which was a period of heavy rainfall in August of 2013. [*See* N.T., 8/1/16, at 13.] Although [the Imhoffs] must clean out the culvert every few months, it has never backed up again or flooded their property. [*See id.* at 12.]

The weight of the evidence supports [the Deemers'] position that the elevations remain the same or similar, but that even if they were changed, the rain falling on top of the riding arena, a 7,000 square foot building, is diverted to the opposite side of the [the Deemers'] property[,] away from [the Imhoffs'] property. Accordingly, with the addition of the riding arena, more water is being diverted away from [the Imhoffs'] property than it was when no building existed.

Trial Court Opinion, 11/7/16, at 9. The trial court additionally noted that "neither the Department of Environmental Protection nor the Westmoreland County Conservation district have ever cited [the Deemers] or required them to undertake any type of sediment and erosion control measures." *Id.* at 10.

Upon review, we conclude that the trial court's factual findings are supported by competent evidence, and its conclusions are sound. *See Stephan*, 100 A.3d at 664-65. Thus, the Imhoffs are not entitled to relief on their second claim.

Judgment affirmed.

J-A24035-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017