J-A14004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PAIGE CIZMEK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT G. GILES AND CYNTHIA | : | |
| GILES | : | |
| | : | No. 1298 WDA 2018 |
| Appellants | : | |

Appeal from the Order Entered August 24, 2018
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2016-7586

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                     **FILED DECEMBER 03, 2019**

Albert G. Giles and Cynthia Giles ("the Gileses") appeal from the order entered August 24, 2018, in the Washington County Court of Common Pleas, which granted, in part, Paige Cizmek's request for a permanent injunction. On appeal, the Gileses contend the trial court erred in granting Cizmek partial relief. For the reasons below, we reverse.

The facts underlying this appeal are summarized by the trial court as follows:

> [The Gileses and Cizmek] own adjoining properties in the Village of Millsboro, East Bethlehem Township, Washington County. Their lots are located in a recorded plan known as the "Addition to Millsboro[.]" []Cizmek owns a southeasterly portion of Lot 18, which is bordered by Water Street in the recorded plan. The Giles[es] own the remaining portion of Lot 18 and all of Lot 19 in the same recorded plan.
>
> The Cizmek and Giles[es]' chains of title share common grantors, being Florence Booze Giles and George W. Giles.

Cizmek's property is approximately 0.073 acres. The Cizmek chain of title consistently describes her property as having a boundary starting "in the West side of Water Street" and closing in a direction "thence by Water Street." When the separation of the southeast portion of Lot 18 occurred, no reference was made to a natural boundary created by the Monongahela River. Cizmek's "anchor deed" recites that Florence and George Giles did not include any portion of Lot 18 which bordered the Monongahela River when they conveyed the portion of Lot 18 now owned by Cizmek. Cizmek did not present a corrective deed that extended her easterly property line to the Monongahela River.

The remaining portions of Lots 18 and 19, not conveyed by Florence and George Giles into the Cizmek line of title, comprise in excess of 0.588 acres. [The 1974 deed by which the Gileses obtained title to the property described the eastern boundary line of the property as "by Water Street" but failed to mention the Monongahela River.[1]] Multiple nineteenth century deeds specifically describe the eastern boundary of Lots 18 and 19 as "Water Street and the Monongahela River." In 2003, [the Gileses] recorded a corrective deed. In this instrument, [the Gileses] corrected the description of the property they received from Florence Booze Giles and George Giles. This corrective deed stated that [the Gileses'] eastern boundary was "along the Monongahela River and thence by Water Street along the Monongahela River."[2]

_____

[1] Deed, 5/29/1974, Florence Booze Giles and George W. Giles to Albert G. Giles and Cynthia J. Giles.

[2] The Gileses later instituted a declaratory judgment/adverse possession action against East Bethlehem Township. On April 18, 2005, the parties entered into a Stipulation and Agreement, whereby the Gileses withdrew all of their claims, and the Township consented to the entry of an order stating the Gileses' property includes the Monongahela River as the eastern boundary line, and the failure to reference the river in their prior deed was "solely as a result of a scrivener error in the preparation of said deed." Answer to Complaint and New Matter Counterclaim and Demurrer, 5/19/2017, at Exhibit 2, Stipulation and Agreement, 4/18/2005, No. G.D. 2003-6459, at ¶ 6.

Water Street is aptly named. Both surveyors, [Jonathon] Mounts and [Joseph] Elwell agreed that a significant portion of the eastern half of Water Street is in the Monongahela River. Water Street was intended to be a one hundred foot right of way. According to both the Mounts and Elwell surveys, Water Street is approximately 60.39 feet in width and its remainder is beyond the river's edge.[3] The improved portion of Water Street is much smaller. According to Mr. Mounts, the paved cart-path of Water Street is approximately 16 feet.

Trial Court Opinion, 8/24/2018, at 2-4 (record citations omitted).

On November 30, 2016, Cizmek filed a complaint, asserting she owns two boat docks "located along and in the Monongahela River directly in front of [her property] and to the east of [her property]." Complaint, 11/30/2016, at ¶ 6. She complained the Gileses "built a metal structure over [her] boat docks," and have "arbitrarily and without reasonable cause physically interfered with the boat docks" as well as her "access and enjoyment of same[.]" *Id.* at ¶¶ 7, 11. Further, Cizmek asserted she and her predecessors in title were authorized to have and maintain the docks pursuant to the Department of Army Corps of Engineers, as evidenced by letters dated June of 1989 and September of 2009. *See id.* at ¶¶ 8, 10. Accordingly, Cizmek sought injunctive relief, requesting the trial court direct the Gileses to remove all blockades and structures restricting her access to the boat docks, as well as money damages.

On May 19, 2017, the Gileses filed an answer with new matter and counterclaim. Specifically, they asserted they are the "rightful owner [of] the

_____

[3] Water Street has been renamed and is now River Street.

river bank in question[]" and Cizmek "only owns [to] Water Street and not to the river." Answer to Complaint and New Matter Counterclaim and Demurrer, 5/19/2017, at ¶¶ 15, 17. Furthermore, the Gileses averred Albert Giles purchased the docks from Cizmek's father, and predecessor in interest, Terry Shimet, on May 6, 1999, for the amount of $2,000.00. *See id.* at ¶ 16. They further claimed that pursuant to the terms of the agreement, Shimet and Cizmek were permitted to use the docks so long as they lived at the River Street property, but that neither of them still reside at 135 River Street. *See id.* at ¶¶ 18-19.

The case proceeded to a non-jury trial conducted on August 1 and August 16, 2018. Thereafter, on August 24, 2018, the trial court entered the following order:

> AND NOW, this 24th day of August, 2018 [Cizmek's] request for a permanent injunction is GRANTED, IN PART. [The Gileses] shall permit and not obstruct [Cizmek's] access to that portion of the Monongahela River bordering Lot No. 18 and Water Street in the Addition to Millsboro Plan. The [Gileses] are not required to permanently remove any structures which cover [Cizmek's] access so long as such structures do not obstruct [Cizmek']s access via a reasonable and available route over Water Street and Lot 18 to the Monongahela River. All other requests for relief are DENIED, including [the Gileses'] Counterclaim, which is DISMISSED.

Order, 8/24/2018. This timely appeal follows.[4]

---

[4] On September 17, 2018, the trial court ordered the Gileses to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), by October 17, 2018. The Gileses complied with the court's directive, and filed a concise statement on October 16, 2018. The trial court filed a Rule

- 4 -

The Gileses frame their three issues on appeal as follows:

A. Did the [trial court] err and abuse its discretion by denying [the Gileses'] due process by failing to credit sufficient evidence regarding property ownership that contradicted its key conclusion?

B. Did the [trial court] err by applying ownership rights to [Cizmek] that were moot to the demolition of the property in question before [Cizmek's] ownership?

C. Did the [trial court] fail to take into consideration the implementation of its court order, the creation of substantial liability and/or risks to [the Gileses]?

Gileses' Brief at 5. We will address the claims together.

The order under appeal granted, in part, Cizmek's request for a permanent injunction.[5] Our standard of review of such orders is well-established:

The grant or denial of a permanent injunction is a question of law. Regarding the trial court's legal determination, our standard of review is *de novo*, and our scope of review is plenary. As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence.

_____

1925(a) opinion on October 19, 2018, and, in large part, referred to the memorandum opinion accompanying its August 24, 2018, order. We note, too, that Cizmek did not file an appellee brief to respond to the Gileses' claims.

[5] We note the Gileses were not required to file post-trial motions following the entry of the court's August 24, 2018, order. Rather, that order was immediately appealable pursuant to Pa.R.A.P. 311(a)(4)(ii). ***See also Thomas A. Robinson Family Ltd. P'ship***, ***supra***, 178 A.3d at 847-848 (holding order granting permanent injunction which changed the status quo between the parties, and took immediate effect, was immediately appealable and not contingent upon entry of a final judgment).

***Thomas A. Robinson Family Ltd. P'ship v. Bioni***, 178 A.3d 839, 843 (Pa. Super. 2017) (quotation omitted), ***appeal denied***, 194 A.3d 560 (Pa. 2018).

Before we address the Gileses' claims on appeal, it is necessary to review the specific findings of the trial court. First, the trial court determined Cizmek's deed was "unambiguous," and "[n]o part of the Cizmek deed or other deeds in her chain of title, following the subdivision of Lot 18, indicate a conveyance of property bordering the Monongahela River." Trial Court Opinion, 8/24/2018, at 4. Accordingly, the court found the eastern boundary line of Cizmek's property is the "western edge of Water Street," and she has "no title or ownership interest in any portion of Lot 18 that may border the Monongahela River." ***Id.*** at 4-5. Furthermore, to the extent Cizmek asserted "she obtained title to unimproved portions of Water Street due to East Bethlehem Township's failure to fully accept and improve the whole of Water Street," the trial court disagreed. ***Id.*** Rather, the court found because the Township had improved part of the street, Cizmek could not claim ownership. ***See id.*** Nonetheless, the court explained the most she would have gained title to was to the center line of the street, *i.e.*, an additional 50 feet,[6] which would still be short of the riverbank. ***See id.*** at n.2. ***See also Murphy v.***

---

[6] As the court explained, Water Street (now River Street) was dedicated as a 100-foot right of way, and pursuant to the surveys presented by both parties, the Monongahela River is 60.39 feet from the western edge of Cizmek's eastern boundary line. ***See*** Trial Court Opinion, 8/24/2018, at 5 n.2. Therefore, even if the street were not improved, the most Cizmek would have gained was an additional 50 feet, which is still 10.39 feet short of the river bank. ***See id.***

*Martini*, 884 A.2d 262, 266 (Pa. Super. 2005) ("[W]here a street has been dedicated to public use and the public does not accept the dedication, if the side of the street is a boundary in the deed for abutting land, the owners of this abutting land take title to the center line of the street.").

Second, the trial court concluded "the Giles[es]' chain of title includes deeds which clearly and unambiguously indicate an eastern boundary that includes both the Monongahela River and Water Street." Trial Court Opinion, 8/24/2018, at 6. Consequently, their portions of Lot 18 and 19 "include ownership of property bordering the Monongahela River." *Id.*

Third, the court determined Shimet's purported sale of the docks to the Gileses in 1999 was ineffective because, at that time, Shimet had no ownership interest in the property. *See id.* at 8. Rather, Shimet had "previously conveyed his interest on August 5, 1986 to his former wife, Linda J. Shimet and did so as part of a 'property settlement.'" *Id.* The trial court noted that the conveyance "did not include a reservation of his ownership of 'docks[,]'" and at the time of the alleged sale, the property was owned by the Guardian of Cizmek's minor estate.[7] *Id.*

Fourth, the trial court found that although the Gileses retained ownership of the portion of Lot 18 bordering the Monongahela River, their ownership was "not without conditions." *Id.* at 6. Because the river is

---

[7] Linda Shimet died sometime before January 24, 1989, and left the property to Cizmek, who at that time was a minor.

navigable, the court explained, "the Giles[es] do not have a right superior to the public regarding the use of the river." *Id.* Moreover, although waterfront property owners, such as the Gileses, "may construct private docks," they may not "defeat the right of access for other property owners in the subdivision." *Id.* at 7. The court opined:

> [B]ecause the Giles[es] own their portion of Lot 18 and 19 as part of a recorded plan, the Addition to Millsboro Plan, their ownership is subject to Cizmek's easement within that plan. "The designation of a street as a boundary, in a conveyance of land, whether opened or not, if it be on land of the grantor, is an implied covenant by the grantor that it shall be opened for the use of the grantee as a public way, and a means of access to the land conveyed." *Barnes v. Philadelphia*, 27 Pa.Super. 84, 1905 WL 3546 (1905) as cited in *Murphy v. Martini*, 884 A.2d 262, 266 (Pa. Super. 2005). The purchasers of lots within a plan upon which streets are plotted acquire an easement in all the streets of the plan, and that this easement is appurtenant to the land of every owner. Such rights are entitled to protection, unless in some legally recognized way the easement has been surrendered. *See Cohen v. Simpson Real Estate Corp.*, 385 Pa. 352, 355, 356, 123 A.2d 715 [(1956)] as cited in *Travaglia v. Weinel*, 191 Pa.Super. 323, 327, 156 A.2d 597, 599 (1959). Cizmek, as owner of a subdivided portion of Lot 18, has a right of ingress and egress over the entirety of Water Street.

*Id.* at 7. The trial court further explained in its Rule 1925(a) opinion that Cizmek's easement with respect to all the streets on the Addition to Millsboro Plan, includes the right of "passage over the undeveloped portions of Water Street which borders the Monongahela River." Trial Court Opinion, 10/19/2018, at 2 (footnote omitted). Based upon these findings, the trial court granted, in part, Cizemk's request for a permanent injunction.

Therefore, it is clear the trial court rejected any claim that Cizmek's property line abutted the Monongahela River. Rather, the court clearly found the Gileses retained the portion of Lot 18 that bordered the river. Nevertheless, the court determined Cizmek had an easement that permitted her access to the river immediately in front of her home, and despite their ownership of the riverfront property, the Gileses were not permitted to obstruct Cizmek's river access.

The Gileses' arguments on appeal are somewhat convoluted. Although they characterize their first issue as a due process claim, it reads more like a challenge to the sufficiency and weight of the evidence before the trial court. Essentially, the Gileses contend the trial court erred when it determined Cizmek's easement to use Water Street for ingress and egress also entitled her to access her boat docks located on the Monongahela River. **See** Gileses' Brief at 11, 14. Moreover, the Gileses assert that because the docks no longer exist, her claim of access is now moot.[8] **See id.** at 23-24. Furthermore, the Gileses insist the trial court failed to consider their potential liability for physical harm that may be incurred by Cizmek if she is permitted to access the river on their land. **See id.** at 24-26.

---

[8] Albert Giles testified he removed the docks in 2003 after he bought them from Shimet because they were in bad shape. **See** N.T., 8/1/2018, at 117, 120. Although Cizmek did not know if the docks remained under Gileses' now covered dock, she acknowledged she and her family used the docks exclusively until 2003.

Because the Cizmek deed does not extend ownership to that portion of Lot 18 that borders the Monongahela River, Cizmek's purported right to river access in front of the residence must stem from either an agreement, or an easement. There is no assertion made by Cizmek that the Gileses agreed to allow her, or any of her predecessors in title, to build a dock on their portion of Lot 18 to access the river. Rather, the trial court found Cizmek had an easement over Water Street, based upon the Addition to Millsboro Plan, which included "passage over the undeveloped portions of Water Street which border the Monongahela River." Trial Court Opinion, 10/18/2018, at 2. Relying upon **Dumm v. Dahl**, 913 A.2d 863 (Pa. Super. 2006), the court explained:

> For persons who are part of the same subdivision, the right to use a navigable waterway includes a right of access in and out of the water[.] … [Alt]hough individual waterfront property owners may construct private docks on a navigable waterway, such right may not defeat the right of access for other property owners in the subdivision. Further, such access is greater than that afforded a "canoe."

Trial Court Opinion, 8/24/2018, at 7 (citations omitted).

For the following reasons, we find the facts in **Dumm** distinguishable from those in the present case. **Dumm** involved a subdivision that bordered Cahadohta Lake in Crawford County. The subdivision plan included residential lots, with five areas along the lake designated as boat landing areas. Each of the residential lot owners had an "easement in those five areas for the purpose of launching and retrieving of watercraft" on the lake. **Dumm**, **supra**, 913 A.2d at 865 (citation omitted). An easement dock was constructed on one of the easement launching areas, and extended "into the water directly in front

of [the a]ppellee's lot" so that when boats were moored to the dock, it "almost eliminated [the a]ppelles's instant access to Cahadohta Lake from the shoreline." *Id.* (citation omitted). The appellee filed a complaint in ejectment against the lot owners that used the dock. She also constructed her own dock during the course of the litigation, "which extends from her property in a manner which prevents utilization of virtually all of the easement dock's eastern side." *Id.* at 868. The trial court ruled in the appellee's favor, concluding the offending dock constituted a private nuisance, and directing the lot owners to dismantle or relocate the dock. *See id.* at 866.

On appeal, a panel of this Court reversed, opining:

It is well-settled that "if a body of water is navigable," as is the case here, "it is publicly owned and may only be regulated by the Commonwealth." ***Pennsylvania Power & Light Co. v. Maritime Management, Inc.***, 693 A.2d 592, 594 (Pa. Super. 1997). Thus, any purported ownership of land extending beneath Canadohta Lake would not afford any right superior to that of the public to use the waterway. *Id.* … Here, each property owner in the subdivision has an implied public easement over the area adjacent to [A]ppellee's property for the purpose of accessing Canadohta Lake, and the scope of the easement presumably includes the right to utilize a dock to effectuate the easement's intended purpose. The easement dock in question merely provides residents of the subdivision with a means of accessing the lake through the launching and retrieving of watercraft.

*Id.* at 868. Therefore, the panel found the appellee failed to establish she "suffered an appreciable invasion of her interests sufficient to constitute a private nuisance." *Id.* at 869. Furthermore, the panel also concluded, "it would be inequitable not to enjoin [the] appellee from maintaining her dock

- 11 -

in such a manner as to render one side of the easement dock unusable." *Id.* The panel noted:

> Implied in this subdivision plan was that the easement areas were fixed to the subdivision for general use by the lot owners, and that the waterfront lot owners would not destroy the function of the easements/easement docks by building private docks which, as here, made the easement/easement dock virtually unusable.

*Id.* at 869 n.4.

The most significant distinction between *Dumm* and the present case is the subdivision plan in *Dumm* specifically designated five "easement areas" that provided all lot owners access to the lake. Therefore, the lot owners' use of the "easement dock" was not only proper, it was contemplated in the original subdivision plan. There is no such explicit easement in the present case.

Rather, we find this Court's decision in *Dillion v. Klamut*, 420 A.2d 462 (Pa. Super. 1980), instructive. *Dillion* involved a subdivision plan for the Village of Wattersonville, which borders the Allegheny River in Washington Township, Armstrong County. Running along the river, but not bordering it, was Water Street. A field laid between Water Street and the river. *See id.* at 463. After a dam was erected south of the village, the river raised so that it now covers the field and part of Water Street, which is unpaved and only supports pedestrian use. *See id.*

The appellees' lots bordered Water Street, which runs north/south, and Market Street, which runs east/west. The appellants owned lots behind and directly west of the appellees. When they moved in, the appellants began to

use the intersection of Water and Market Streets as a beach, and petitioned the United States Army Corps of Engineers for permission to build a dock. The appellees objected and filed a declaratory judgment action, claiming they acquired ownership of the area in question by adverse possession. The court agreed. *See id.* at 464. Nevertheless, the appellants continued to use Water Street as a beach and river access. The appellees then filed an injunction action, and the court enjoined the appellants from using Water Street in that manner.

On appeal, the appellants argued they "have an implied easement of access to the river." *Id.* A panel of this Court disagreed. First, the panel noted that "a grantee of a lot sold according to a plan of lots upon which streets are plotted acquires an easement in the streets as plotted." *Id.* (citation omitted). Accordingly, the appellants had "an easement of a right of passage over Market and Water Streets." *Id.* Second, the panel recognized "the establishment of a street or road that leads directly to a body of water creates a right of access to the water." *Id.* at 465. However, the panel concluded the proposition was not helpful to the appellants:

> [A]s plotted on the recorded plan, neither Market Street nor Water Street led directly to the river. As has been mentioned, Market Street led to Water Street, and between Water Street and the river there was an open field. Therefore, [the] appellants' easement of passage over Market Street and Water Street was only an easement to use those streets as streets; it did not include the right of access to the river.
>
> We recognize that because of a shift in the river, Water Street now touches on the river, and Market Street therefore now does lead directly to the river. However, that shift did not by itself expand

- 13 -

[the] appellants' easement. In **Meridian Township v. Palmer**, 279 Mich. 586, 273 N.W. 277 (1937), a public road originally ran along a body of water but after awhile a large amount of soil was relicted to the area between the edge of the road and the shoreline. The landowner whose property abutted the road set off the relicted area as a private beach. The court permitted this use, holding that the road as established only represented a right of public passage and not a right of access to the water. … [The a]ppellants' position in this case is even weaker than that maintained by those who opposed the abutting landowner in **Meridian Township v. Palmer**, **supra**. If an easement to use a road established as a road running along the water does not include the right of access to the water, it is all the more apparent that the easement to use Water Street, which was not established as running along the river, did not include the right of access to the river. Moreover, [the] appellants have not proved that the right of passage over Water Street has been transformed by dedication or adverse use into a right to use the street for access to the river or as a beach.

Even if we were to hold that [the] appellants' easement of passage over Market Street and Water Street included the right of access to the river, it would not follow that [the] appellants had the right to use Water Street as a beach. The use of an easement must be confined strictly to the purposes for which the easement was created.

**Id.**

The facts in the present case are similar to those in **Dillion**. Neither the Addition to Millsboro plan, nor either of the surveys prepared for trial, depict Water Street as leading directly to the Monongahela River. Although here there is no field separating Water Street from the river as there was in **Dillion**, we note the trial court concluded Cizmek's deed "unambiguous[ly]" described the eastern boundary line of her property as the "western edge of Water Street" and that she has no "title or ownership interest in any portion of Lot

- 14 -

18 that may border the Monongahela River." Trial Court Opinion, 8/24/2018, at 4-5.

Although we accept the trial court's factual finding, we disagree with the trial court's legal conclusion that Cizmek's "right of ingress and egress over the entirety of Water Street[,]" pursuant to the Addition to Millsboro plan, includes the right to access the river immediately in front of her property. *Id.* at 7. Indeed, the Addition to Millsboro plan does not depict, or even reference, the Monongahela River. *See* Complaint, 11/30/2016, at Exhbit C (Addition to Millsboro plan, dated January 26, 1847). Accordingly, we do not agree the subdivision plan implicitly granted all lot owners direct river access. Furthermore, as noted above, when the Gileses' predecessors-in-interest subdivided Lot 18 and sold a portion to Cizmek's predecessors-in-interest, they specifically **excluded** the portion of Lot 18 east of Water Street, extending to the river. This Court has stated waterfront property owners are "entitled to the land within the boundaries called for in their deeds, but nothing more." *Matthews v. Bagnik*, 41 A.2d 875, 878 (Pa. Super. 1945).

Consequently, because we agree with the Gileses that Cizmek's easement over Water Street was limited to ingress and egress, and "did not

include the right of access to the river[,]"[9] we reverse the order of the trial court granting, in part, Cizmek's request for a permanent injunction.[10]

Order reversed.

Judge Musmanno joins the memorandum.

Judge Kunselman notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2019

---

[9] *See* Gileses' Brief at 18.

[10] Because of our disposition of the Gileses' first challenge to the court's ruling, we need not address their remaining claims.